
FILED by _____ D.C.
ELECTRONIC

**May 21, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## CASE NO.  **08-21474-CIV-GOLD/MCALILEY**

IN RE:  Request from Panama Pursuant to
the Treaty Between the United States of
America and the Republic of Panama on
Mutual Assistance in Criminal Matters in
the Matter of Hector Crisostomo Williams
Raphael and Armando Da Silva Tavares Busto
_____/

### <u>MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER</u>

The United States is seeking an Order appointing a Commissioner to collect evidence

requested by the Republic of Panama in its attached Treaty Request made pursuant to the <u>Treaty</u>

<u>Between the United States of America and the Republic of Panama on Mutual Assistance in</u>

<u>Criminal Matters</u>, signed on April 11, 1991, and entered into force on September 6, 1995 [hereinafter

referred to as the "Treaty"].  A treaty constitutes the law of the land.  U.S. Const. Art. VI.  The

provisions of a treaty have equal footing with acts of Congress and are binding on the courts.

<u>Asakura v. City of Seattle, Washington</u>, 265 U.S. 332, 341 (1924); <u>United States v. The Peggy</u>, 5

U.S. 103 (1801).  To the extent that the provisions of a treaty are inconsistent with a preexisting

statutory provision, the treaty supersedes the statute.  <u>United States v. Erato</u>, 2 F.3d 11, 15-16 (2d

Cir. 1993).

A.      <u>The Treaty</u>

The United States and the Republic of Panama entered into the Treaty for the purpose of

promoting mutual legal cooperation in criminal matters.  The Treaty obliges each state to provide

assistance to the other in investigations of offenses covered under the Treaty and in court

proceedings related to such offenses.  Article 1(1).  The assistance includes interviews and

depositions of witnesses, production of documents and other things, and asset freezes. Article 1(2);

see Barr v. U. S. Department of Justice, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), aff'd, 819 F.2d 25

(2d Cir. 1987).

B.    Use of the Treaty to Execute Requests for Assistance

In executing Panamanian requests, the Treaty obligates the courts to follow its domestic law

and procedures except to the extent that the Treaty provides otherwise. The Treaty states, at Article

1(4), that:

> All requests under this treaty shall be executed in accordance with
> and subject to the limitations imposed by the laws of the Requested
> State. The method of execution specified in the request shall be
> followed except to the extent prohibited by the laws of the Requested
> State.

As stated in the Letter of Submittal to the President of the United States from the United

States Department of State, dated October 16, 1991, "the Treaty is designed to be self-executing."

Our federal district courts routinely utilize the "commission" procedure authorized by 28 U.S.C.

§1782, the statute governing the provision of assistance for foreign judicial proceedings generally,

to fulfill their judicial responsibility under the Treaty in executing Panamanian requests.

1.    Appointment of a commissioner

Section 1782 provides in pertinent part:

> The district court . . . may direct that the testimony or statement [of
> a person who resides or is found within the district] be given, or the
> document or other thing be produced, before a person appointed by
> the court.

A federal district court customarily appoints or commissions a person ("commissioner") to collect

evidence on behalf of the court and authorizes the commissioner to submit the evidence collected

2

to the requesting foreign court or authority. With requests for assistance in criminal matters, a court typically appoints an Assistant United States Attorney as commissioner. However, a court may also commission a foreign authority together with (or in lieu of) an Assistant United States Attorney. See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29 (S.D.N.Y. 1991) [hereinafter Hong Kong].

Application to a federal district court for appointment of a commissioner to execute a foreign request for judicial assistance is handled ex parte. In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 688 (D.C. Cir. 1989); In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).

2.      Establishment of an evidence-collecting procedure

Section 1782 further provides in pertinent part:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A federal district court empowers a commissioner to collect the evidence using the procedure prescribed by the court. A court has "complete discretion in prescribing the procedure to be followed." Sen. Rep. No. 1580, 88th Cong., 2d Sess. 1 (1964), reprinted in 1964 U.S. Code Cong. & Admin. News 3782, 3789. When a court's order fails to specify a procedure by which a commissioner is to collect the evidence, the Federal Rules of Civil Procedure apply. In re Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016 (9th Cir. 1994); Hong Kong, 138 F.R.D. at 32. However, as Section 1782 makes clear, when a court does specify a procedure other than one in accordance with the Federal Rules of Civil Procedure, the alternative

3

procedure shall apply. In re Letter of Request from the Government of France, 139 F.R.D. 588, 590-591 (S.D.N.Y. 1991).

As summarized in the Letter of Submittal to the President of the United States from the United States Department of State, dated October 16, 1991:

> Article 6 obligates the Central Authorities of each Party to comply promptly with a request or, when appropriate, to transmit a request to the authority having jurisdiction to execute it. That authority is required to use all legal means to execute the request. The article also states that the judicial authorities of the Requested State shall have jurisdiction to issue subpoenas, search warrants or other orders necessary to execute a request.

In other words, the Treaty requires courts to order the use of procedures comparable to those applicable in domestic investigations and prosecutions of criminal matters rather than, by default, the Federal Rules of Civil Procedure.

> a.     Commissioner's subpoena

The Treaty contemplates that federal district courts will use compulsory measures to execute Panamanian requests. The Treaty provides, at Article 9(1):

> A person requested to testify or to produce documentary information or articles in the territory of the Requested State may be compelled to do so in accordance with the requirements of the law of the Requested State.

If a federal district court so orders, a commissioner may use the attached form, entitled "Commissioner's Subpoena," to obtain the requested evidence. See, e.g., United States v. Erato, 2 F.3d 11, 12-13 (2d Cir. 1993) (incorporating in pertinent part the district court's order directing the use of commissioner's subpoenas). The commissioner's subpoena is a creation of neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure, but is an order of the court

4

for the production of evidence in accordance with both the Treaty and Section 1782. See Article 5(1); 28 U.S.C. 1651. Upon authorization by a court, a commissioner may issue such commissioner's subpoenas as are necessary to execute the request.

            b.     Notice of evidence taking

Inasmuch as grand jury and criminal trial subpoenas are issued without notice to other than the recipients (i.e., no notice to targets, defendants, or third parties), commissioner's subpoenas issued in execution of Panamanian requests likewise should require no notice to other than the recipients. Accordingly, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a Panamanian request asks for specific notice procedures.[1]

C.     The Present Request

The instant Treaty Request has been made by the Republic of Panama Ministry of Government and Justice, the Competent Authority under Article 4 of the Treaty, in connection with a criminal investigation by the Eleventh Prosecutor's Office of the First Judicial Circuit of Panama. Panamanian authorities are conducting an investigation regarding a claim by Juan Demostenes

---

[1] Historically, United States authorities have executed requests for judicial assistance in criminal matters without notification to actual or potential targets of investigations, or even to parties in proceedings, in order to protect against compromising foreign investigations and proceedings. Moreover, United States authorities customarily rely on the requesting courts and authorities to provide such notice directly to the relevant parties as foreign law requires. Finally, requesting courts and authorities routinely request that United States executing authorities follow particular, stated notice procedures when such procedures are necessary or useful under the foreign law or practice. For example, foreign requests frequently ask (1) that a person to be interviewed (generally a defendant or suspect) be given notice of applicable testimonial privileges (e.g. against self-incrimination) at the time of the interview and (2) that a defendant and defense counsel be permitted to be present during the taking of testimony of a witness and be given sufficient notice to make arrangements.

Arosemena Borrell (AROSEMENA BORELL) that he was a victim of fraud. AROSEMENA BORELL states that in June 2003, he met with several directors, among whom was Hector Crisostomo Williams Raphael (WILLIAMS RAPHAEL) of the Panamanian company Incotesa, S.A. WILLIAMS RAPHAEL proposed that AROSEMENA BORELL invest $350,000 in a hotel project known as Admiral Bay, which would subsequently be returned to AROSEMENA BORELL through Armando da Silva Tavares Busto (TAVARES BUSTO), an Uruguayan financial agent in Miami, Florida. TAVARES BUSTO was supposedly the legal representative of the company Financial Investments International, LLC, which was to obtain a $3 million loan for the project.

After several conversations with WILLIAMS RAPHAEL and TAVARES BUSTO, AROSEMENA BORELL agreed to transfer $350,000 of his money to a Bank of America account under the name of law firm Sacher, Zelman, Van Sant, Paul, Beiley, Hartman, Terzo, Rolnick & Waldaman, P.A. This money transfer was to occur by means of several remittances beginning in July 2003. Meanwhile, WILLIAMS RAPHAEL, TAVARES BUSTO, and AROSEMENA BORELL signed an investment and participation contract that was officially recorded in Panama.

AROSEMENA BORELL claims that as of July 2005, the contract agreement had not been fulfilled by WILLIAMS RAPHAEL and TAVARES BUSTO, and that he had not been given any information on the use or destination of his investment. AROSEMENA BORELL also claims to be aware of other investors who believe they similarly have been cheated. Panama has filed criminal charges against WILLIAMS RAPHAEL and TAVARES BUSTO.

Based on these facts and in furtherance of their investigation, the Republic of Panama requests our assistance in obtaining bank records from Bank of America.

Accordingly, to execute this request, the government moves this Court to issue the attached

6

Order appointing Assistant United States Attorney Jose A. Bonau as Commissioner, authorizing him

to take the actions necessary, including the issuance of Commissioner's subpoenas, to obtain the

evidence requested, and to adopt such procedures in receipt of the evidence as are consistent with

the intended use thereof in the Republic of Panama.

WHEREFORE, the government requests that the Court enter the proposed order.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By:

JOSE A. BONAU
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.  0389714
99 NE 4th Street
Miami, Florida 33132
Telephone No. (305) 961-9426
Facsimile No. (305) 530-6168
E-Mail: Jose.Bonau@usdoj.gov

7

COMMISSIONER'S SUBPOENA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TO: _____

_____

_____

I, Jose A. Bonau, an Assistant United States Attorney for the Southern District of Florida,

acting under the authority of the Treaty Between the United States of America and the Republic of

Panama on Mutual Assistance in Criminal Matters, and under Title 28, United States Code, Section

1782, for the purpose of rendering assistance to Panama, command that you appear before me in

Room 400, in the James Lawrence King Federal Building, located at 99 NE 4th Street, Miami,

Florida, on _____, 2008, at ___ a.m./p.m., to provide testimony/documents regarding

an alleged violation of the laws of the Republic of Panama, namely, fraud, and that at the time and

place aforesaid you provide the following:


For failure to attend and provide testimony/said documents, you may be deemed guilty of

contempt and may be liable to penalties under the law.

Dated:


COMMISSIONER JOSE A. BONAU
Assistant United States Attorney
Southern District of Florida
Telephone No. (305) 961-9426

TRANSLATION

REQUEST FOR JUDICIAL ASSISTANCE

The Eleventh Prosecutor's Office of the First Judicial Circuit of the Province of Panama, requests Judicial Assistance to the authorities of the Government of the **United States of America**, based on the **Mutual Legal Assistance** in Penal Matters Treaty signed between the **United States of America** and **Panama**, ratified through Law **No. 20 of June 22, 1991**, within the preliminary proceedings against **HECTOR CRISOSTOMO WILLIAMS RAPHAEL and ARMANDO DA SILVA TAVARES BUSTO,** for the presumptive commission of the offense **AGAINST PATRIMONY (SWINDLE),** illegal act denounced by Mr. **JUAN DEMOSTENES AROSEMENA BORRELL,** through his attorney, Licenciado **ARTURO GONZALEZ BASO.**

SUMMARY OF FACTS

The plaintiff **JUAN DEMOSTENES AROSEMENA BORRELL** states that in June 2003, he met with several directors of the Panamanian corporation INCOTESA, S.A., among which there was Mr. **HECTOR WILLIAMS,** who proposed him to participate in a hotel project known as ADMIRAL BAY, which would be developed in the city of Colon, and for which financing on his part was required in the amount of three hundred fifty thousand dollars ($350,000.00), which amount would subsequently be returned to him through a financial agent established in Miami, United States called **ARMANDO DA SILVA TAVARES,** of Uruguayan nationality, legal representative of the company FINANCIAL INTERNATIONAL L.L.C. and/or FINANCIAL INVESTMENT SERVICES, which would obtain a three million dollars loan ($3,000,000.00).

That after several conversations with **ARMANDO DA SILVA TAVARES and HECTOR CRISOSTOMO WILLIAMS RAPHAEL,** the transfer was agreed of the aforementioned three hundred fifty thousand dollars ($350,000.00), to the banking account of the U.S. law firm **SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A.,** numbered ▉▉▉-2778 from Bank of America, **made through** several remittances starting in the month of July 2003. Parallel to this, the parties signed a private investment

*Gisela Espino*
Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-20

and participation contract which was officially recorded at the **First Notary's Office of the Circuit of Panama.**

The person affected indicates that as of the date of presentation of the denunciation in July 2005, that agreed in the contract has not been fulfilled by Messrs. **WILLIAMS RAPHAEL and TAVARES BUSTO,** nor has he been given any reason of the use and destination of the money contributed, being aware that like him, other persons have been likewise cheated by these same persons.

As evidence, among other documents provided were the vouchers of transfers of the aforementioned monies and the private investment contract registered at the First Notary's Office of the Circuit of Panama.

Through resolution dated July 22, 2005, the Assistant Prosecutor's Office of the Republic ordered the receipt of inquiry depositions of the aforementioned **ARMANDO DA SILVA TAVARES BUSTO and HECTOR WILLIAMS RAPHAEL,** filing charges of Offense against Patrimony (Fraud), penal behavior classified under Title IV, Chapter IV, of the Second Volume of the Penal Code (pp. 82-86).

## DESCRIPTION OF THE JUDICIAL ASSISTANCE

We respectfully request the authorities of the Government of the **United States of America** to undertake whatever actions may be necessary for carrying out the judicial formality required within the summary proceedings entrusted to this agency of the Attorney General's Office.

**The formalities to be carried out are:**

- **To certify before the respective authority, the legal existence of the law firm SACHER, ZELMAN, VAN STANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A.**

- **That we be informed whether Messrs. HECTOR CRISOSTOMO WILLIAMS RAPHAEL, Panamanian citizen, with personal identity card No. ▆▆▆-518, born on ▆▆▆▆▆▆, 1956, son of CARLOS DUNCELL WILLIAMS and CONCEPCION RAPHAEL DE WILLIAMS and ARMANDO DA SILVA TAVARES BUSTO, born in the Republic of Uruguay, with passport No. ▆▆▆.849.6,**

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-21

son of ARMANDO DA SILVA TAVARES and ELIDA BUSTO, are part of said corporation.

- Certify the existence of the account numbered ████-████-2778, Bank of America, located at 100 E. 2nd Street, Miami, Florida. If among its account holders there appear Messrs. TAVARES BUSTO and WILLIAMS RAPHAEL. As well as of the corporation FINANCIAL INVESTMENT INTERNATIONAL, L.L.C., with presumptive address at: 5820 SW 117 ST. CORAL GABLES, FLORIDA 33156, UNITED STATES, telephones +1 (305) 661 1047 and fax +1 (305) 661 1046, and if the aforementioned Messrs. TAVARES and WILLIAMS are part of it as partners or directors.

- If in said account actual transfers of money were made on July 17, 2003 for $55,121.10, on July 26, 2003, for $35,000.00, on August 28, 2003 for $105,000.00 and another for $20,000.00.

Attached is a copy of the Instructions of this same date, whereby this Judicial Assistance is ordered.

## PURPOSE OF THE ASSISTANCE REQUESTED

The purpose of the Assistance requested is to comply with the provisions originating from the Instructions of this agency, in order that they may be included as evidence in the proceedings underway and to establish all the extenuating or aggravating circumstances of the offense for which the defendants are being investigated.

Transcript of the norms presumptively infringed by Messrs. HECTOR CRISOSTOMO WILLIAMS RAPHAEL and ARMANDO DA SILVA TAVARES BUSTO .

Violations against Patrimony, in the modality of Swindle and Other Frauds: Title IV, Chapter IV, Volume II of the Penal Code.

"Article 190: Whoever through deceit obtains for himself or a third party an illegal benefit to the detriment of another, shall be sanctioned with imprisonment of 1 to 4 years and 50 to 200 days/fine.

The sanction will be from 5 to 10 years of imprisonment if the patrimonial harm exceeds one hundred thousand Balboas or is incurred by proxies, managers or administrators in the exercise of their functions or if it is incurred to the

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No: 171-7-10-86
Panamá, Rep. de Panamá

F.22

detriment of public administration or a charitable establishment."

ANNEXES:

1. Authenticated copy of the instruction whereby this judicial assistance is ordered.

2. Copies of the vouchers of transfer of money to account ■■■■■-2778, Bank of America.

Given in the City of Panama on the sixteenth (16) day of the month of November of two thousand five (2005).

The Prosecutor,

Licdo. Víctor Raúl Barrios Puga
Eleventh    Prosecutor    of    the    First
Judicial Circuit
of the Province of Panama

VRBP/fdc.

ATTORNEY GENERAL'S OFFICE
ELEVENTH PROSECUTOR'S OFFICE OF THE FIRST
JUDICIAL CIRCUIT OF PANAMA

I certify that the foregoing is a true copy of its original.

Lcda. Rita Jaén
Secretary
Panama, November 16, of the year 2005.

(SEAL:  ILLEGIBLE)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-23

ELEVENTH PROSECUTOR'S OFFICE OF THE FIRST JUDICIAL CIRCUIT OF PANAMA, Panama, November sixteen (16) of two thousand five (2005).

This agency of the Attorney General's Office draws up indictment against Messrs. **HECTOR CRISOSTOMO WILLIAMS RAPHAEL and ARMANDO DA SILVA TAVARES BUSTO**, for the presumptive commission of the offense **AGAINST THE PATRIMONY (SWINDLE)**, illegal act field by Mr. **JUAN DEMOSTENES BORREL AROSEMENA**, through his judicial proxy, Licenciado **ARTURO GONZALEZ BASO**.

Based on the accusations filed by Licenciado Arturo González Baso, it is necessary to compile evidence for clarifying the violation in question, which because they are found in a foreign country, in this case the United States of America, must be requested to the Government of said country, legally based on the *Mutual Assistance in Penal Matters Treaty signed between it and the Republic of Panama, ratified through Law No. 20 of June 22, 1991.*

The evidence required consists of the certification of the existences of the law firm SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A., as well as of the account numbered ██████-2778 of Bank of America and, lastly, accredit the transfers of money alleged by the plaintiff.

For this reason, the undersigned Eleventh Prosecutor of the First Judicial Circuit of the Province of Panama, though the use of its legal powers, provides: To request the Judicial

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-24

13 of 76

Assistance of the Government of the United States of America, in order that they may provide the aforementioned information.

Let the pertinent instructions be given so that what has been ordered here may be duly complied with.

Legal Basis: Articles 804, 877, 2044, 2046, and other provisions of the Judicial Code.

Let it be fulfilled:

The Prosecutor,

Licdo. Víctor Raúl Barrios Puga

The Secretary,

Licda. Rita Isabel Jaén Chong

ATTORNEY GENERAL'S OFFICE
ELEVENTH PROSECUTOR'S OFFICE OF THE FIRST
JUDICIAL CIRCUIT OF PANAMA

I certify that the foregoing is a true copy of its original.

Lcda. Rita Jaén
Secretary

Panama, November 16, of the year 2005.

(SEAL:   ILLEGIBLE SEAL)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

TOWERBANK

REQUEST OF ☐ DRAFT ☐ CASHIER'S CHECK ☐ TRANSFER

(☐ BY AIR ☐ BY CABLE ☐ BY TELEX)

AT THE LOCATION OF

AMOUNT:    U.S. 20,000.00

AMOUNT (in letters)  Twenty-thousand

BENEFICIARY:  Sacher, Zelman, Van Sant, Paul, Beily,

Hartmann & Waldman

BENEFICIARY ACCOUNT NUMBER: ▇▇▇▇-2778

WITH:    BANK OF AMERICA

ADDRESS:  100 E. 2nd Street, Miami, Florida, United States BY

ORDER:  Juan D. Borrell

BUYER'S NAME:  Juan D. Borrell

ADDRESS: ▇▇▇▇▇▇▇▇▇▇▇▇▇

ARE AUTHORIZED TO CHARGE US FOR THE TOTAL OR THEIR EXPENSES TO

OUR ACCOUNT No. ▇▇▇▇▇184-7

SIGNATURE:  (Sgd. There appears an illegible signature)

DATE:

Principal :            (BLANK)

Commission :            ( BLANK)

Revenue Stamp :        (BLANK)

Telegraphic Cable:            (BLANK)

Postage :          (BLANK)

Amount collected in dollars or Balboas            (BLANK)

In ☐  Cash      ☐ Check No.          (BLANK)

Dated          (BLANK)    Bank          (BLANK)


☐ Authorized by the Client to charge to his account

NOTE: This voucher is the Receipt for the transfer value, draft
      or  cashier's  check  that  you  have  purchased.  For  its
      validity  it  requires  the  machine  impression  or  the  Bank
      seal and the cashier's signature.

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

P-26

NOTE:   IT IS UNDERSTOOD THAT THIS TRANSACTION IS SUBJEC TO THE CONDITIONS ANOTATED IN THE REVERSE SIDE.

**TRANSLATOR'S NOTE: WRITTEN BY HAND APPEAR:**

$12,500.00  CHECK- 21532 of a Banistmo Cashier's Check of 08/25/03

$7,500.00 of the account No. ██████(illegible)

(SEAL: FIRST JUDICIAL CIRCUIT OF PANAMA ---- ELEVENTH CIRCUIT NOTARY ----- REPUBLIC OF PANAMA)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-27

**REQUEST OF INTERNATIONAL TRANSFER**

Date: _____   Currency:  DOLLARS _____

Amount to be Send:  $105,000.00 _____

For use of the Bank:

Commission: _____ 100.00 _____

Branch/Center:  Obarrio   No. _____

Telex/Swift: _____ 15.00 _____

Correspondent: _____ 15.00 _____

TOTAL:  105,130.00   INPUTTED BY:  (Initials)

Approved: _____

**Applicant Data:**

NAME:  JUAN D. BORRELL   Identity Card/Passport No. ████-1833

Telephone: ████████

Address: ████████████████████████████████████████████

████████████████

Select the form of Payment:

☐ Cash   ☐ Check   ☒ Debit to an account

By these means I authorize BANISTMO to debit funds

Account N°. ████████7793   A/N Takuji Tsuda for the transfer

value, plus the expenses that this causes.   Authorized

Signature: (Sgd. there appears an illegible signature)

Beneficiary Data:   SACHER, ZELMAN, VAN SANT, PAUL, BEILY,

HARTMAN & WALDMAN, P.A.

NAME:  (BLANK)   Account No. ████████2778 _____

Address:  100 S.E. 2nd. Street, Miami, Florida 33131 _____

City:  MIAMI   Country:  UNITED STATES _____

Telephone:  (305)371-8797 _____

Reference for the beneficiary: _____

**BENEFICIARY BANK:**

Name of the Bank:  BANK OF AMERICA _____

Address:  100 S.E. 2nd. Street, Miami, Florida _____

City:  Miami   Country:  United States _____

SWIFT: _____   ABA (9) (digits):  063100277

CHIPS ID (6 digits) _____

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-28

Account Number: ███████2778    Special Instructions: <u>TRUST</u>
<u>ACCOUNT A/C INCOTESA RETAINER</u>

**INTERMEDIARY BANK:**

Name of the Bank:  <u>(BLANK)</u>

Address: <u>(BLANK)</u>

City: <u>(BLANK)</u>    Country:  <u>(BLANK)</u>

SWIFT:  <u>(BLANK)</u>   ABA (9) (digits): <u>(BLANK)</u>

CHIPS ID (6 digits)  <u>(BLANK)</u>

Account Number of the Bank to be transferred.  <u>(BLANK)</u>

_____

PRIMER BANCO DEL ISTMO, S.A.

OBARRIO BRANCH

RECEIVED

NAME: (There appears a signature)

DATE:  AUGUST 28, 200(illegible)

HOUR:  12:55

770023290

(SEAL: PRIMER BANCO DEL ISTMO ----- (ILLEGIBLE) ----- AUGUST 28,

2003 ----- OBARRIO BRANCH)

**Lic. GISELA ESPINO**
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-29

**Banistmo**

**Primer Banco del Istmo**

TRANSFER- MT100 (Swift - BISTPAPA)

ORIGINAL       Branch:  EL DORADO       Date:  07/30/2003

| | | |
|---|---|---|
| Swift Code | : | 021000021 |
| Correspondent's Name | : | THE  CHASE  MANHATTAN  BANK  N.Y.  - |
| | | (DRAFTS) |
| Reference          (*20) | : | TE1000402252 |
| Amount             (*32) | : | Date 070330 |
| | | Currency    Amount 60,000.00 |

Applicant (*50)

| | |
|---|---|
| Name: | JUAN D. BORRELL/ACCOUNT ▓▓▓4347 |
| Address: | ██████████████████████████████ |
| | (ILLEGIBLE), ███████████ |
| Country: | PANAMA/TEL. ████-9510 |

| | | |
|---|---|---|
| Intermediary      (56) | : | |
| Beneficiary Bank (57) | : | BANK OF AMERICA/ABA:  063100277 |
| Beneficiary       (*59) | : | |
| Name: | | SACHER,  ZELMAN,  VAN  SANT,  PAUL, |
| | | BEILY, HARTMAN 6 |
| Address: | | WALLMAN,  P.A.  ACCOUNT/ ████████ |
| | | 2778 |
| Country: | | MIAMI/USA/TEL. 305-371-8797 |
| Payment Detail (70) | : | TRUST ACCOUNT A/C INCOTESA RETAINER |
| Expenses Detail   (71) | : | BENEFICIARY |
| Receipt Info      (72) | : | |

**FORM OF PAYMENT**

Correspondent Account:   ██████006-0

| | |
|---|---|
| AMOUNT: | 50,000.00 |
| COMMISSION: | 62.50 |
| SWIFT: | 15.00 |
| CORRESP: | 0.00 |
| TOTAL: | 50,077.50 |

| Account No. | Name | Amount | Check No. |
|---|---|---|---|
| ████4347 | GISELLE BORREL DE T. | 50,077.50 | 0 |
| | TOTAL | 50,077.50 | |

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

P-30

24

| Origin Branch: | EL DORADO | | | | |
|---|---|---|---|---|---|
| Inputted by: | JORGE SICLAIR RILEY AYARZA | Hour: 9:13:34 | Jul | 30 | 2003 |
| 1st Approval | LINETTE SAUDERS RAMOS | Hour: 9:50:10 | Jul | 30 | 2003 |
| 2nd Approval | BELINDA BALOCCO | Hour: 9:50:18 | Jul | 30 | 2003 |

(SEAL:  PRIMER BANCO DEL ISTMO ------ (ILLEGIBLE) ----- JULY 30, 2003------ EL DORADO BRANCH)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-31

3C

**REQUEST OF INTERNATIONAL TRANSFER**

Date: _____   Currency:  DOLLARS _____

Amount to be Send:  $50,000.00 _____

For use of the Bank:

Commission: _____ (BLANK) _____   Branch/Center: _____ BLANK)

No.  (BLANK) _____

Telex/Swift  (BLANK) _____

Correspondent: ____ (BLANK) _____

TOTAL:  (BLANK) _____

INPUTTED BY:  (BLANK) _____   Approved:  (BLANK) ____

Applicant Data:

NAME:  JUAN D. BORRELL Identity Card/Passport No. ████1833

Telephone: ██─9510

Address: ███████████████████████████████

██████████████

Select the form of Payment:

☒  Cash  ☒  Check   ☒  Debit to an account

By these means I authorize BANISTMO to debit funds

Account N°.   (BLANK) _____   A/N    (BLANK) ____   for  the  transfer

value, plus the expenses that this causes.

Authorized Signature:  (BLANK) _____

**Beneficiary Data:**  SACHER,  ZELMAN,  VAN  SANT,  PAUL,  BEILY,

HARTMAN & WALDMAN, P.A.

NAME:  (BLANK)   Account No. ████─2778

Address:  100 S.E. 2nd. Street, Miami, Florida 33131

City: Miami    Country:  UNITED STATES

Telephone:  (305)371-8797

Reference for the beneficiary:  (BLANK)

**BENEFICIARY BANK:**

Name of the Bank:  BANK OF AMERICA

Address:  100 S.E. 2nd. Street, Miami, Florida

City: Miami     Country:  United States

SWIFT:   (BLANK)    ABA (9) (digits):  063100277

CHIPS ID (6 digits)  (BLANK)

Account Number: ████─2778

Special Instructions:  TRUST ACCOUNT A/C INCOTESA RETAINER

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-32

**INTERMEDIARY BANK:**

Name of the Bank:   (BLANK) _____

Address:  (BLANK) _____

City:  (BLANK)      Country:    (BLANK) _____

SWIFT:    (BLANK)   ABA (9) (digits):   (BLANK) _____

CHIPS ID (6 digits)  (BLANK) _____

Account Number of the Bank to be transferred:   (BLANK) _____

_____

■■■■3290

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-33

32

**TOWERBANK**

REQUEST OF  ☐  DRAFT  ☐  CASHIER'S CHECK  ☑  TRANSFER

(☐ BY AIR   ☐  BY CABLE  ☐ BY TELEX)

AT THE LOCATION OF

AMOUNT:    35,000.00

AMOUNT (in letters)   Thirty five thousand   00/100

BENEFICIARY:  Sacher, Zelman, Van Sant, Paul, Beily,

Hartmann & Waldman

BENEFICIARY ACCOUNT NUMBER:  ███████-2778

WITH:    BANK OF AMERICA

ADDRESS:  100 S.E. 2nd Street, Miami, Florida, 33131

BY ORDER:  JUAN BORRELL

BUYER'S NAME:  JUAN BORRELL

ADDRESS:  ███████████████████

ARE AUTHORIZED TO CHARGE US FOR THE TOTAL OR THEIR EXPENSES TO

OUR ACCOUNT No.  ████████084-7

SIGNATURE:  (Sgd. there appears an illegible signature)

DATE:

Principal:_____(BLANK)_____

Commission:_____(BLANK)_____

Revenue Stamp :_____(BLANK)_____

Telegraphic Cable:_____(BLANK)_____

Postage :_____(BLANK)_____

Amount collected in dollars or Balboas   _____

In  ☐  Cash      ☐ Check No.   _____

Dated _____    Bank   _____

☐ Authorized by the Client to charge to his account

NOTE: This voucher is the Receipt for the transfer value, draft
      or  cashier's  check  that  you  have  purchased.  For  its
      validity  it  requires  the  machine  impression  or  the  Bank
      seal and the cashier's signature.

*Lic.* **GISELA ESPINO**
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-34

NOTE:   IT IS UNDERSTOOD THAT THIS TRANSACTION IS SUBJEC TO THE
CONDITIONS ANOTATED IN THE REVERSE SIDE.

**TRANSLATOR'S NOTE: WRITTEN BY HAND APPEAR:**

ABA # 063100277

$25,000.00 ----- CHECK- 07466 of the USAID Cooperative

$10,000.00 of the account No. ██████084-7

RECEIVED ----- TOWERBANK ----- 2003 JULY 26 AT 10:35

(SEAL: FIRST JUDICIAL CIRCUIT OF PANAMA ---- ELEVENTH CIRCUIT
NOTARY ----- REPUBLIC OF PANAMA)


Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-35

INTERNATIONAL TRANSFER DATA

15/07/2003          12:04:30 PM


OPERATION NUMBER-SEC.:     10026469-1
CORRESPONDENT:             WACHOVIA BANK, N.A.
CURRENCY:                  DOLLARS
TRANSFER AMOUNT:           84,878.90

**BUYER/APPLICANT DATA**

NAME:     JUAN DEMOSTENES BORRELL AROSEMENA

**INTERMEDIARY BANK DATA**

NAME OF THE BANK:          (BLANK)
NAME OF THE OFFICE:        (BLANK)
ADDRESS:                   (BLANK)
CITY:                      (BLANK)
COUNTRY:                   (BLANK)

**PAYER BANK DATA**

NAME OF THE BANK:          7- BANK OF AMERICA

NAME OF THE OFFICE:        29- MIAMI, FLORIDA

ADDRESS:                   201 BISCAYNE BLVD (33131)

CITY:                      293-FLORIDA

COUNTRY:                   29-UNITED STATES

GEOGRAPHIC ZONE:           1-  USA/MEXICO
ABA:                       063100277
Swift:                     BOFAUS3M

**BENEFICIARY DATA:**

NAME:                      SACHER, ZELMAN, VAN SANT,
                           PAUL, BEILEY, HARTMAN AND
                           WALDMAN P.A
ACCOUNT:                   ■■■■■2778

TYPE:                      2- COMPANY
ADDRESS:                   BANK OF AMERICA 100 S.E. 2ND
                           STREET, MIAMI. FL. 33131
TELEPHONE                  001 305 371 8797
CITY:                      MIAMI, FLORIDA

COUNTRY:                   UNITED STATES

BENEFICIARY  REFERENCE:
TRUST  OPERATION A/C INCOTESA
RETAINER

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F- 36



**OBSERVATIONS:**

DIR: 100 S.E. 2ND STREET, MIAMI, FL. 33131

(Sgd. There appears an illegible signature)

(SEAL: REPUBLIC OF PANAMA --- FEDERAL PROSECUTOR'S OFFICE --- ELEVENTH PUBLIC PROSECUTOR'S OFFICE OF THE CIRCUIT --- ILLEGIBLE)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-37



BANCO GENERAL, S.A.
VOUCHER- INTERNATIONAL TRANSFERENCE

TRANSFER #:                          10026469
CORRESPONDENT BANK:                  WACHOVIA, BANK, N.A.
CLIENT:                              JUAN    DEMOSTENES    BORRELL
                                     AROSEMENA

ADDRESS:                             ████████████████████████████

DATE:                                15/07/2003
TELEPHONE:                           ████-6364

**BENEFICIARY DATA:**

BENEFICIARY                          SANCHEZ,  ZELMAN,  VAN  SANT,
                                     PAUL,  BEILEY,  HARTMAN  AND
                                     WALDMAN P.A.
TELEPHONE                            001 305 371 8797

ADDRESS:                             BANK OF AMERICA 100 S.E. 2ND
                                     STREET, MIAMI. FL. 33231

CITY:                                MIAMI, FLORIDA

COUNTRY:                             UNITED STATES

BENEFICIARY  REFERENCE:              TRUST  OPERATION  A/C  INCOTESA
                                     RETAINER

**BANK DATA TO BE TRANSFERRED.**
BANK:                                BANK OF AMERICA
ACCOUNT:                             ██████2778
  CURRENCY:                          DOLLARS
GEOGRAPHIC ZONE:                     U.S.A./MEXICO
SWIFT CODE:                          BOFAUS3M
                                     29-UNITED STATES
ABA CODE:                            063100277
CITY:                                293-FLORIDA
ADDRESS:                             201 BISCAYNE BLVD (33131)

TOTALS (B/.)
AMOUNT:                              84,878.90
EXPENSES:                                121.10
                                     - - - - - - - -
TOTAL:                               85,000.00

INTERMEDIARY BANK DATA:

BANK:

OBSERVATIONS
- - - - - - - - - - - - - - - - -
DIR:  100 S.E. 2ND STREET, MIAMI, FL 33131

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-38

AUTHORIZED   SIGNATURE:   (Sgd.   there   appears   an   illegible   signature)

AUTHORIZED   SIGNATURE:   (Sgd.   there   appears   an   illegible   signature)

All  international  transfer  that  is  attended  after  1:00  p.m.,  shall  be  processed  the  following  date.   In  case  that  is  returned  due  to  lack  of  information  or  incorrect  data  provided  by  the  client,  this  will  assume  the  claim  charges.

(SEAL:   ILLEGIBLE)

(SEAL:   BANCO GENERAL  -----  HEAD OFFICE  -----  JULY 15, 2003  PANAMA, R.OF PANAMA)

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-39

COOPERATIVA DE AHORRO Y CRÉDITO DE EMPLEADOS DEL USAID/PANAMA, R.L.

No. 07429

PANAMA, R. OF PANAMA, JULY 14, 2003

PAY TO THE ORDER OF ***JUAN BORRELL***  **B/.**  $85,000.00

*EIGHTY FIVE THOUSAND WITH 00/100*                         BALBOAS

(Sgd. There appears an illegible signature)

**BANCO GENERAL**
PANAMA, REP. OF PANAMA
ACCOUNT No. ▟▟▟▟▟▟152-5
= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

EXONERATED FROM REVENUE STAMPS AND OTHER CHARGES, ARTICLES 76 OF THE LAW 38 OF OCTOBER 22, 1980.

0007489 -▟▟▟▟▟▟▟▟ 525

| AFFILIATE No. | | | PROMISSORY NOTE NO. | | No. 07429 |
|---|---|---|---|---|---|
| ACCOUNT | DEBITS | AMOUNT | ACCOUNT | CREDITS | AMOUNT |
| | | | | BCO.  GENERAL Current Account BANCO GENERAL | |
| (Illegible)  OVER  TERM  AND FIXED DEPOSITS | 143,505 | .64 | 11-11-006-00-00 | | $85,000. 00 |
| | | | 11-03-011-00-00 | TERM  DEPOSIT LOAN HANDLING | $3.500  14 |
| | | | 22-14-002-00-00 | ACCOUNTS  FOR NOTARY PAYMENT | $5.  50 |
| | | | 22-19-001-00-00 | DEP.  FOR THIRD PARTIES PAYMENTS | $55,008  00 |

LOAN AGAINST FIXED TERM DEPOSIT APPROVED BY THE CREDIT COMMITTEE IN SESSION #133 OF 07/9/2003.
429          07/14/2003                    15:22:01

armando
TOTAL B/    $143,505    64          DATE
TOTAL B/    $143,505  64

VERIFIED BY _____    RECEIVED BY _____

APPROVED BY _____    IDENTITY CARD No. _____

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-40

39

**TOWERBANK**

REQUEST OF ☐ DRAFT ☐ CASHIER'S CHECK ☑ TRANSFER

(☐ BY AIR ☐ BY CABLE ☐ BY TELEX)

AT THE LOCATION OF

AMOUNT: ___55,121.10_____

AMOUNT (in letters) ___Fifty five thousand one hundred twenty one___
00/100

BENEFICIARY: Sacher, Zelman, Van Sant, Paul, Beily,
Hartmann & Waldman

BENEFICIARY ACCOUNT NUMBER: ●━━━━-2778

WITH: BANK OF AMERICA  ABA: 063100277

ADDRESS: Bank of America, 100 S.E. 2nd Street, Miami,
Florida, 33131

BY ORDER: JUAN BORRELL

BUYER'S NAME: JUAN BORRELL

REF. Trust Operation, A/C Incotesa Retainer

ADDRESS: (BLANK)

ARE AUTHORIZED TO CHARGE US FOR THE TOTAL OR THEIR EXPENSES TO
OUR ACCOUNT No. ●━━━━━084-7

SIGNATURE: ˙(Sgd. there appears an illegible signature)

DATE:

Principal:_____(BLANK)_____

Commission:_____(BLANK)_____

Revenue Stamp: _____(BLANK)_____

Telegraphic Cable:_____(BLANK)_____

Postage:_____(BLANK)_____

Amount collected in dollars or Balboas _____

In ☐ Cash   ☐ Check No.

Dated _____   Bank _____

☑ **Authorized** by the Client to charge to his account

**NOTE: This** voucher is the Receipt for the transfer value, draft
or cashier's check that you have purchased. For its

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-41

validity it requires the machine impression or the Bank seal and the cashier's signature.

(Sgd. There appears an illegible signature)

SIGNATURE

NOTE:   IT IS UNDERSTOOD THAT THIS TRANSACTION IS SUBJECT TO THE CONDITIONS ANOTATED IN THE REVERSE SIDE.

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-42

31 of 76

4I

**REQUEST OF INTERNATIONAL TRANSFER**

Date: _____   Currency:   DOLLARS _____

Amount to be Send:  $105,000.00 _____

For use of the Bank:

Commission: _____100.00_____

Branch/Center:  Obarrio___  No. _____

Telex/Swift: _____15.00_____

Correspondent: _____15.00_____

TOTAL:   105,130.00    INPUTTED BY: (Initials)

Approved: _____

**Applicant Data:**

NAME:   JUAN D. BORRELL Identity Card/Passport No. ████1833

Telephone: ████9510

Address: ████████████████████████████████
████████████

Select the form of Payment:

☐  Cash   ☐  Check    ☒ Debit to an account

By these means I authorize BANISTMO to debit funds

Account N°. ██████7793    A/N  Takuji Tsuda, for the transfer

value, plus the expenses that this causes.     Authorized

Signature: (Sgd. There appears an illegible signature)

Beneficiary Data:  SACHER, ZELMAN, VAN SANT, PAUL, BEILY,
HARTMAN & WALDMAN, P.A.

NAME:  (BLANK)   Account No. ███████-2778 _____

Address:  100 S.E. 2nd. Street, Miami, Florida 33131 ___

City:  Miami   Country:   UNITED STATES _____

Telephone:  (305)371-8797 _____

Reference for the beneficiary: _____

**BENEFICIARY BANK:**

Name of the Bank:   BANK OF AMERICA _____

Address:  100 S.E. 2nd. Street, Miami, Florida _____

City:  Miami   Country:   United States _____

SWIFT: _____   ABA (9) (digits):  063100277

CHIPS ID (6 digits) _____

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

P-43



Account Number:   ▇▇▇▇-2778    Special Instructions:   <u>TRUST</u>
<u>ACCOUNT A/C INCOTESA RETAINER</u>

**INTERMEDIARY BANK:**

Name of the Bank:   (BLANK)

Address:   (BLANK)

City:   (BLANK)      Country:   (BLANK)

SWIFT: .  (BLANK)   ABA (9) (digits):   (BLANK)

CHIPS ID (6 digits)   (BLANK)

Account Number of the Bank to be transferred.:   (BLANK)

PRIMER BANCO DEL ISTMO, S.A.

OBARRIO BRANCH

RECEIVED

NAME: (There appears a signature)

DATE:  AUGUST 28, 200(illegible)

HOUR:  12:5(illegible)

▇▇▇3290

(SEAL: PRIMER BANCO DEL ISTMO ----- (ILLEGIBLE) ----- AUGUST 28,
2003 ----- OBARRIO BRANCH)

(Sgd. There appears an illegible signature)

Signature verified

OPERATIONS

(Sgd. There appears an illegible signature)

Funds verified

OPERATIONS

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-44

**TOWERBANK**

REQUEST OF ☐ DRAFT ☐ CASHIER'S CHECK ☐ TRANSFER

(☐ BY AIR ☐ BY CABLE ☐ BY TELEX)

AT THE LOCATION OF

AMOUNT: ____ U.S. 20,000 _____

AMOUNT (in letters) __ Twenty thousand _____

BENEFICIARY: Sacher, Zelman, Van Sant, Paul, Beily, _____

Hartmann & Waldman

BENEFICIARY ACCOUNT NUMBER: ████████-2778 _____

WITH: ·   BANK OF AMERICA _____

ADDRESS: 100 E. 2nd Street, Miami, Florida, United States

BY ORDER: JUAN D. BORRELL _____

BUYER'S NAME: JUAN D. BORRELL _____

ADDRESS: (BLANK) _____

ARE AUTHORIZED TO CHARGE US FOR THE TOTAL OR THEIR EXPENSES TO

OUR ACCOUNT No. ____ ████████184-7 _____

SIGNATURE: (Sgd. there appears an illegible signature) ____

DATE:

_____

Principal:_____ (BLANK) _____

Commission:_____ (BLANK) _____

Revenue Stamp:____ (BLANK) _____

Telegraphic Cable:_____ (BLANK) _____

Postage:_____ (BLANK) _____

Amount collected in dollars or Balboas _____

In ☐ Cash       ☐ Check No. _____

Dated _____   Bank _____

_____

☐ Authorized by the Client to charge to his account

NOTE: This voucher is the Receipt for the transfer value, draft
          or cashier's check that you have purchased. For its
          validity it requires the machine impression or the Bank
          seal and the cashier's signature.

Lic. GISELA ESPINO
Intérprete Público Autorizado
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

F-45

(Sgd. There appears an illegible signature)

SIGNATURE

NOTE:   IT IS UNDERSTOOD THAT THIS TRANSACTION IS SUBJEC TO THE CONDITIONS ANOTATED IN THE REVERSE SIDE.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = =
THE FOREGOING IS A TRANSLATION INTO ENGLISH OF THE DOCUMENT IN SPANISH WHICH WAS PRESENTED TO ME.  PANAMA, SEPTEMBER 13, 2007

Lic. GISELA ESPINO
Intérprete Público Autorizada
Res. No. 171-7-10-86
Panamá, Rep. de Panamá

f-46



# REPÚBLICA DE PANAMÁ
## MINISTERIO DE GOBIERNO Y JUSTICIA
### DIRECCIÓN NACIONAL PARA LA EJECUCION
### DE LOS TRATADOS DE ASISTENCIA LEGAL MUTUA

## CASO
## HECTOR CRISOSTOMO WILLIAMS
## RAPHAEL Y OTROS

## DELITO
## CONTRA EL PATRIMONIO

## LIBRADA POR:
## FISCALIA UNDECIMA DEL PRIMER CIRCUITO
## JUDICIAL DE PANAMÁ

## PANAMÁ – ESTADOS UNIDOS

# *República de Panamá*

## Ministerio de Gobierno y Justicia
### *Oficina Nacional para la Ejecución de*
### *Los Tratados de Asistencia Legal Mutua y Cooperación Internacional*

Panamá, miércoles 26 de diciembre de 2007
Nota No. 1004-DN-TALM-07

Doctora
**MARY ELLEN WARLOW**
Directora de Asuntos Internacionales
División Criminal
Departamento de Justicia
Estados Unidos de América
E.    S.    D.

**RE:** Solicitud de Asistencia Legal Mutua, dentro de las investigaciones que se siguen contra **HECTOR CRISOSTOMO WILLIAMS RAPHAEL Y OTROS.**

Tengo el honor de dirigirme a Usted, en mi condición de representante de la Autoridad Central de la República de Panamá, de acuerdo a lo dispuesto en el artículo 4 del Tratado sobre Asistencia Mutua en Asuntos Penales, suscrito entre los gobiernos de la República de Panamá y los Estados Unidos de América, adoptada mediante Ley panameña N° 20 de 22 de julio de 1991 (Gaceta Oficial N° 21,837 de 25 de julio de 1991), en ocasión de remitirle Solicitud de Asistencia Legal Mutua, librada por la Fiscalía Undécima del Primer Circuito Judicial de Panamá, dentro de las investigaciones que se siguen en contra del señor **HECTOR CRISOSTOMO WILLIAMS RAPHAEL Y OTROS,** por la presunta comisión del delito Contra el Patrimonio. El contenido de la Solicitud de Asistencia Legal Mutua esta fundamentada en los siguientes Artículos 1 (1) (2) (b) (g) (i).

El suscrito Director Nacional para la Ejecución de los Tratados de Asistencia Legal Mutua y Cooperación Internacional le ruega a Usted, conforme a lo dispuesto en su ordenamiento jurídico interno, el cumplimiento a la presente solicitud en le menor tiempo que le sea posible, y hace propicia la oportunidad para expresarle mi agradecimiento y las seguridades de mi alta y distinguida consideración.

EDWIN A. ALDEANO
Director Nacional

EA/bmn
Le. cuarenta y seis (46) fojas útiles

*"Al Servicio de la Paz, la Hermandad y la Justicia Internacional"*
*Avenida Central, entre calles 2.a y 3ª., San Felipe*
*Apartado Postal 1628, zona 1, Panamá*
*Teléfono: (507) 512-2105 / 512-2124 Fax 512-2143*
*e-mail: ealdeano@gobiernoyjusticia.gob.pa*

37 of 76

# *República de Panamá*

## Ministerio de Gobierno y Justicia
### *Oficina Nacional para la Ejecución de*
### *Los Tratados de Asistencia Legal Mutua y Cooperación Internacional*

December 26, 2007
1004-DN-TALM-07

Mrs.
**MARY ELLEN WARLOW**
Director Office of International Affairs
Criminal Division
Department of Justice
United State of America
E.   S.   D.

**RE**: Request of Mutual Legal Assistance in the investigation fallowed against **HECTOR CRISOSTOMO WILLIAMS RAPHAEL Y OTROS.**

Hereby I have the honor to address you, acting in my condition of agent of the Central Representation Authority of the Republic of Panama according in the disposition of article 4 by the treaty between the United State of America and the Republic of Panama on Mutual Assistance in Criminal Matters and extradition, law 20 of July 20, 1991 and Official Gazette 21,837 of July 25, 1991 of the Republic of Panama, I remitted the request from the Mutual Legal Assistance in the investigation fallowed against **HECTOR CRISOSTOMO WILLIAMS RAPHAEL Y OTROS**, from the Eleventh Prosecutor's Office of the First Judicial Circuit of Panama, is being conducted for the crime against the Patrimony. The contents of requests for Mutual Legal Assistance are based by Articles 1 (1) (2) (b) (g) (i).

The National Director subscribe, the attachment in this treaties on Mutual Assistance in Criminal Matters and International Cooperation demand to the Central Authority, in accordance to establish in your laws the compliance of the present assistance in the less time that be possible, and I take this occasion to reiterate the highest and distinguished consideration for you.

Sincerely,

**EDWIN A. ALDEANO**
Director



EA/omm
Enclosed: forty six (46) leaf.

*"Al Servicio de la Paz, la Hermandad y la Justicia Internacional"*
*Avenida Central, entre calles 2.a y 3ª., San Felipe*
*Apartado Postal 1628, zona 1, Panamá*
*Teléfono: (507) 512-2105 / 512-2124 Fax 512-2143*
*e-mail: ealdeano@gobiernoyjusticia.gob.pa*



# *Procuraduría General de la Nación*

## ASISTENCIA JUDICIAL

**Estado Requerido** Estados Unidos de América

**Autoridad Judicial Requirente** Panamá (Fiscalía 11ª Cto.)

**Sindicados** Héctor C. Williams R. y otros

**Delito** Contra el patrimonio

**Fecha de la Asistencia Judicial** 16 – nov – 2005

## SECRETARIA GENERAL

**Salida** 17 – dic – 07          **Devuelto** _____

### Panamá, República de Panamá

F-2



**PGN**

*República de Panamá*
*Procuraduría General de la Nación*
*Secretaría de Asuntos Internacionales*

Panamá, 17 de diciembre de 2007
PGN-AI-1832 -07

MINISTERIO DE GOBIERNO Y JUSTICIA
DIRECCION NAL DEL T.A.L.M.
**RECIBIDO**
Fecha ___20/12/07___
Hora ___11:30 am___
Firma ___Luy___

Licenciado
Edwin Aldeano
Director Nacional para la Ejecución de los
Tratados de Asistencia Legal Mutua y
Cooperación Internacional (TALM)
E.  S.  D.

Señor Director:

Me dirijo a usted con ocasión de remitirle la Asistencia Judicial Internacional de 16
de noviembre del 2005 librada por la Fiscalía Undécima del Primer Circuito Judicial
de Panamá, dentro de las investigaciones que se siguen por la supuesta comisión
de delito Contra el Patrimonio.

Sobre el particular, es importante destacar que la solicitud elevada por la Fiscalía
Undécima del Primer Circuito Judicial de Panamá, tiene como fundamento la Ley No.
20 de 22 de julio de 1991, por la cual se aprueba el Tratado de Asistencia Mutua en
Asuntos Penales entre Panamá y Estados Unidos de América.

En ese sentido, solicito que en amparo al citado tratado, remita la presente rogatoria
internacional a los Estados Unidos de América, a fin de que se proceda a la práctica
de las diligencias que a través de ese medio, se requieren.

Atentamente,

Greta Marchosky de Turner
Secretaria de Asuntos Internacionales



GMdeT/CJRA
Adj.: Lo indicado
c.c. Fiscalía Undécima de Circuito

Ave. Perú y Calle 33 A (Frente al Parque Porras)
Teléfono: (507) 207-3018 - Fax: (507) 227-2449 - E-mail: asuntosint@ministeriopublico.gob.pa
Apartado 0816-06747, Zona 1 Panamá

F-9

## SOLICITUD DE ASISTENCIA JUDICIAL

La Fiscalía Undécima de Circuito del Primer Circuito Judicial de la Provincia de Panamá, solicita Asistencia Judicial a las autoridades del Gobierno de Los Estados Unidos de América, con fundamento en el Tratado sobre **Asistencia Mutua** en Asuntos Penales suscrito entre los E.E.U.U. de América y Panamá, ratificado mediante **Ley No. 20 de 22 de junio de 1991**, dentro de las sumarias seguidas a HECTOR CRISOSTOMO WILLIAMS RAPHAEL y ARMANDO DA SILVA TAVARES BUSTO, por la presunta comisión del delito CONTRA EL PATRIMONIO (ESTAFA), hecho ilícito querellado por el señor JUAN DEMOSTENES BORREL AROSEMENA, a través de su apoderado judicial, el Licenciado ARTURO GONZALEZ BASO.

## RESUMEN DE LOS HECHOS

Expone el querellante **JUAN DEMOSTENES BORREL AROSEMENA**, que en el mes de junio de 2003, se entrevistó con varios directivos de la empresa panameña INCOTESA, S.A., entre los que se encontraba el señor HECTOR WILLIAMS, quienes le propusieron participar en un proyecto hotelero denominado ADMIRAL BAY, el cual se desarrollaría en la ciudad de Colón, y para el que se requería un financiamiento de su parte por la suma de trescientos cincuenta mil dólares ($350,000.00); cantidad ésta que posteriormente le sería retribuida a través de un agente financiero radicado en Miami, Estados Unidos, llamado **ARMANDO DA SILVA TAVARES**, de nacionalidad Uruguaya, representante legal de la empresa FINANCIAL INTERNATIONAL L.L.C. y/o FINANCIAL INVESTMENT SERVICES, quien obtendría un préstamo de tres millones de dólares ($3,000,000.00).

Que posterior a varias conversaciones sostenidas con **ARMANDO DA SILVA TAVARES** y HECTOR CRISOSTOMO WILLIAMS RAPHAEL, se acordó la transferencia de los trescientos cincuenta mil dólares ($350,000.00) aludidos, a la cuenta bancaria de la firma de abogados estadounidense SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A., numerada ████2778 del Bank of America, realizada en varias remesas a partir del mes de julio de 2003. Paralelo a ello, entre las partes se suscribió un contrato privado de inversión y participación protocolizado en la **Notaría Primera del Circuito de Panamá**.

E. 3

Indica el afectado que a la fecha de presentación de su denuncia en julio de 2005, lo convenido en el contrato no se ha cumplido por parte de los señores **WILLIAMS RAPHAEL y TAVARES BUSTO**, así como tampoco se le ha dado razón del uso y destino del dinero aportado, teniendo conocimiento que al igual que él otras personas han sido engañadas de igual manera por estas mismas personas.

Como pruebas se aportaron, entre otros documentos, los comprobantes de las transferencias de dineros aludidas, y el contrato de inversión privado notarizado en la Notaría Primera del Circuito de Panamá.

Mediante resolución de fecha 22 de julio de 2005, la Fiscalía Auxiliar de la República, ordenó la recepción de declaraciones indagatorias de los precitados **ARMANDO DA SILVA TAVARES BUSTO y HECTOR WILLIAMS RAPHAEL**, formulándoles cargos por el delito Contra El Patrimonio (Estafa), conducta penal tipificada en el Título IV, Capítulo IV, del Libro Segundo del Código Penal (fs.82-86).

## DESCRIPCION DE LA ASISTENCIA JUDICIAL

Solicitamos de manera respetuosa a las autoridades del Gobierno de los Estados Unidos de América, efectuar las gestiones que sean conducentes para la realización de la diligencia judicial requerida dentro de la instrucción sumarial a cargo de esta agencia del Ministerio Público.

**Las diligencias a practicar se describen a continuación:**

- **Se certifique ante la autoridad respectiva, la existencia legal de la firma de abogados SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A.**

- **Se nos informe que los señores HECTOR CRISOSTOMO WILLIAMS RAPHAEL, ciudadano panameño, con cédula de identidad personal No. ██-518, nacido el ███████ de 1956; hijo de CARLOS DUNCELL WILLIAMS y CONCEPCION RAPHAEL DE WILLIAMS, y ARMANDO DA SILVA TAVARES BUSTO, nacido en la República del Uruguay, con pasaporte No ███.849.6, hijo de ARMANDO DA SILVA TAVARES y ELIDA BUSTO, forman parte de dicha sociedad.**



- **Certificar la existencia de la cuenta numerada ████████-2778, Bank of America, con dirección 100 E. 2nd. Street, Miami, Florida. Si entre sus cuentahabientes figuran los señores TAVARES BUSTO y WILLIAMS RAPHAEL. Así también de la compañía FINANCIAL INVESTMENT INTERNATIONAL L.L.C., con supuesta dirección: 5820 SW 117 ST.**

F-4

CORAL GABLES, FLORIDA 33156, ESTADOS UNIDOS, teléfonos +1 (305) 661 1047 y fax +1 (305) 661 1046, y si forman parte de ella los precitados TAVARES y WILLIAMS, como socios o directivos.

- Si en dicha cuenta se hicieron efectivas las transferencias de dinero, en fechas 17 de julio de 2003, por $ 55,121.10, de 26 de julio de 2003, por $ 35,000.00, 28 de agosto de 2003, por $ 105,000.00 y otra por $ 20,000.00.

Se adjunta copia de la Providencia de esta misma fecha, por medio de la cual se dispone esta Asistencia Judicial.

## PROPOSITO DE LA ASISTENCIA SOLICITADA

La finalidad de la Asistencia requerida, es cumplir con las disposiciones emanadas de las Providencias de esta agencia de Instrucción, a fin de que consten como prueba en las sumarias que se adelantan, y establecer todas las circunstancias atenuantes o agravantes del delito por el cual se encuentran investigados los imputados.

Transcripción de las normas presuntamente infringidas por los señores HECTOR CRISOSTOMO WILLIAMS RAPHAEL y ARMANDO DA SILVA TAVARES BUSTO. ·

Delitos Contra El Patrimonio, en la modalidad de Estafa y Otros Fraudes: **Título IV, Capítulo IV, Libro II del Código Penal.**

"**Artículo 190: El que mediante engaño se procure a sí o a un tercero un provecho ilícito en perjuicio de otro, será sancionado con prisión de 1 a 4 años y de 50 a 200 días-multas.**
**La sanción será de 5 a 10 años de prisión si la lesión patrimonial excede de cien mil balboas o la cometen apoderados, gerentes o administradores en ejercicio de sus funciones, o si se comete en detrimento de la administración pública o de un establecimiento de beneficencia."**



4

ANEXOS:

1. Copia autenticada de la providencia por la cual se ordena esta asistencia judicial.

2. Copias de los comprobantes de transferencia de dinero a la cuenta ███████ ████2778, Bank of America.

Dado en la Ciudad de Panamá, a los dieciséis (16) días del mes de noviembre de dos mil cinco (2005).

El Fiscal,

Licdo. Víctor Raúl Barrios Puga
Fiscal Undécimo de Circuito del Primer Circuito
Judicial de la Provincia de Panamá.

VRBP/fdc.





SECRETARIO GENERAL DE LA
PROCURADURÍA GENERAL DE LA NACIÓN

CERTIFICA:

Que la firma que antecede al parecer es auténtica del funcionario autorizado de este documento por la semejanza que guarda con la que reposa registrada en Secretaría, como la que él mismo acostumbra a utilizar en sus actos

06   de   dic.   de   07

Secretario General

## APOSTILLE

*( Convention de la Haye du 5 octobre 1961 )*

*1. En Panamá el presente documento público*

*2. ha sido firmado por* RIGOBERTO GONZALEZ MONTENEGRO

*3. quien actúa en calidad de* SECRETARIO GENERAL

*4. y está revestido del sello / timbre de* PROCURADURIA GENERAL DE LA

NACION

## CERTIFICADO

*5. En el Ministerio de Relaciones Exteriores*   *6. el día* 14/12/2007

*7. por* AUTENTICACION   Y   LEGALIZACION

*8. bajo* / # Rec.: OFICIAL

*9.*

*10. Firma del Funcionario*   *Jorge P. Torregroza*

*Firma Autorizada*

JEFE DE AUTENTICACION Y LEGALIZACION
MINISTERIO DE RELACIONES EXTERIORES

F6

FISCALIA UNDECIMA DEL PRIMER CIRCUITO JUDICIAL DE LA PROVINCIA DE PANAMA. Panamá, dieciséis (16) de noviembre de dos mil cinco (2005).

Esta agencia del Ministerio Público, instruye sumarias en contra de los señores **HECTOR CRISOSTOMO WILLIAMS RAPHAEL y ARMANDO DA SILVA TAVARES BUSTO**, por la presunta comisión del delito **CONTRA EL PATRIMONIO (ESTAFA)**, hecho ilícito querellado por el señor **JUAN DEMOSTENES BORREL AROSEMENA**, a través de su apoderado judicial, el Licenciado **ARTURO GONZALEZ BASO**.

De los hechos querellados por el Licenciado Arturo González Baso, se hace necesario recabar pruebas para el mejor esclarecimiento del hecho delictivo que nos ocupa, las cuales por encontrarse en país extranjero, en este caso los Estados Unidos de América, deben ser requeridas al Gobierno de ese país, con fundamento legal en el Tratado sobre Asistencia Mutua en Asuntos Penales suscrito entre el mismo y Panamá, ratificado mediante Ley No. 20 de 22 de junio de 1991.

Las pruebas requeridas consisten en la certificación de existencia de la firma de abogados SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, TERZO, ROLNICK & WALDAMAN, P.A. Así, como de la cuenta numerada ████-2778 del Bank of America, y por último, acreditar las transferencias de dinero aducidas por la parte actora.

En razón de ello, el suscrito Fiscal Undécimo del Primer Circuito Judicial de la Provincia de Panamá, en uso de sus facultades legales, dispone: Solicitar la Asistencia Judicial del Gobierno de los Estados Unidos de América, con la finalidad de que nos brinden la información supracitada

F-7

Gírese las instrucciones pertinentes, para que se cumpla a cabalidad con lo aquí ordenado.

Fundamento de Derecho: Artículos 804, 877, 2044, 2046, y demás concordantes del Código Judicial.

Cúmplase:

El Fiscal,

Licdo. Víctor Raúl Barrios Puga

La Secretaria,

Licda. Rita Isabel Jaén Chong

MINISTERIO PUBLICO
FISCALIA UNDECIMA DE CIRCUITO DEL
PRIMER CIRCUITO JUDICIAL DE PANAMA

Certifico que lo anterior es fiel copia de su original

SECRETARIO(A)

Panamá ___ de _____ del año _____



SECRETARIO GENERAL DE LA
PROCURADURIA GENERAL DE LA NACION
CERTIFICA:

Que la firma que antecede al parecer es auténtica del funcionario autorizante de este documento por la semejanza que guarda con la que reposa registrada en la Secretaría, como la que él mismo acostumbra a utilizar en sus sellos oficiales.

___ de _____ de 07

Secretario General



*APOSTILLE*
*( Convention de la Haye du 5 octobre 1961 )*

*1. En Panamá el presente documento público*

*2. ha sido firmado por* ___ RIGOBERTO GONZALEZ MONTENEGRO ___

*3. quien actúa en calidad de* ___ SECRTARIO GENERAL ___

*4. y está revestido del sello / timbre de* ___ PROCURADURIA GENERAL DE LA ___
___ NACION ___

*CERTIFICADO*

*5. En el Ministerio de Relaciones Exteriores   6. el día* ___ 14/12/2007 ___

*7. por* ___ JEFE DE AUTENTICACION Y LEGALIZACION ___

*8.* ___   / # Reg.:   OFICIAL ___

Jorge P. Torregroza

*Firma Autorizada*

JEFE DE AUTENTICACION Y LEGALIZACION
MINISTERIO DE RELACIONES EXTERIORES

**TOWERBANK**

SOLICITUD DE ☐GIRO  ☐ CHEQUE DE GERENCIA  ☐ TRANSFERENCIA  (☐ Por Aéreo ☐ Por Cable ☐ Por telex )
SOBRE LA PLAZA DE:

FECHA:

CANTIDAD: _U.S. 20,000. ºº_

CANTIDAD (en letras): _Veinte mil_

BENEFICIARIO: _Jacked Zelmow, Van faut Paul, Beity, Halbuan & Waldman_

No. DE CUENTA DEL BENEFICIARIO: _2778_

CON: _Bank of Auvuca_

DIRECCION: _100 E. 2nd Street Miami Florida Estados Unidos_

POR ORDEN: _Juan M.Cornell_

NOMBRE DEL COMPRADOR: _Juan M.Cornell_

DIRECCION: _____

ESTAN AUTORIZADOS A CARGARNOS POR EL TOTAL _04-7_
O SUS GASTOS A NUESTRA CUENTA No. _____

FIRMA: _____

NOTA: QUEDA ENTENDIDO QUE ESTA TRANSACCION ESTA SUJETA A LAS CONDICIONES ANOTADAS EN EL REVERSO

FO-055 REV. ABR. 2002

RECIBO
TOWERBANK

2003 AUG 28

Principal

Comisión

Timbres

Telgr. Cable

Porte Correo

Total cobrado en
dólares o balboas

En ____ ☐ Efectivo ☐ Cheque No. ____

Fechado: ____ Banco ____

☐ Autorizado por el Cliente cargarle a su cuenta

NOTA: Este comprobante es el Recibo por el valor de la transferencia, giro
o cheque de gerencia que Ud. ha comprado. Para su validez
requiere la impresión de la máquina o sello del Banco y la firma del
cajero.

$12,700.00  04. 2,532  de Agoto chequn
_____  de Junio de 7/08/13
$ 7,30000 de Louis # ___ 04-7

# SOLICITUD DE TRANSFERENCIA INTERNACIONAL

**Fecha:** _____  **Moneda:** DOLARES

**PRIMER BANCO DEL ISTMO S.A.**
**PROCESADO**
**28 AGO 2003**
**SUC. OBARRIO**

**Monto a Enviar:** $105,000.00

(Para uso del Banco):
**Comisión:** 100.00     **Sucursal/Centro:** Obarrio   **Nº** _____

**Telex/Swift:** 15.00

**Corresponsalía:** 15.00

**TOTAL:** 105,130.00     **Capturado:** _____   **Aprobado:** _____

## Datos del Ordenante:

**Nombre:** JUAN D. BORRELL     **Céd/Pas Nº** ████333   **Teléfono:** ████████

**Dirección:** ████████████████████████████████

*Seleccione la forma de Pago:*

☐ Efectivo  ☐ Cheque  ☒ Débito a cuenta.  Por medio de la presente autorizo a BANISTMO a debitar de mi

**FIRMA Verificada OPERACIONES**  **Verificado OPERACIONES**

**Cuenta Nº** ████7793   **A/N** Takuji Tsuda   por el valor de la transferencia, más

los gastos que ésta ocasione.   **Firma Autorizada:** _Guille R de Tauda_

## Datos del Beneficiario: SACHER,ZELMAN,VAN SANT, AUL,BEILY,HARTMAN & WALDMAN, P.A.

**Nombre:** _____   **Nº de Cuenta:** ████2778

**Dirección:** 100S.E.2nd.,Street, Miami, Florida 33131

**Ciudad:** MIAMI   **País:** ESTADOS UNIDOS   **Teléfono:** (305)371-8797

**Referencia para el beneficiario:** _____

## BANCO BENEFICIARIO:

**Nombre del Banco:** BANK OF AMERICA

**Dirección:** 100 S.E.2nd.Street   **Ciudad:** Miami   **País:** Estados Unidos

**SWIFT:** _____   **ABA (9) dígitos):** 063100277   **CHIPS ID (6 dígitos):** _____

**Número de cuenta:** ████2778   **Instrucciones especiales:** TRUST ACCOUNT A/C INCOTESA RETAINER

## BANCO INTERMEDIARIO:

**Nombre del Banco:** _____

**Dirección:** _____   **Ciudad:** _____   **País:** _____

**PRIMER BANCO DEL ISTMO S.A.**
**SUC. OBARRIO**
**RECIBIDO**
**NOMBRE:**
**FECHA:** 28 AGO 2003

**SWIFT:** _____   **ABA (9 dígitos):** _____   **CHIPS ID (6 dígitos):** _____

**Número de cuenta del fondo a transferir:** _____

L/ 1-03

HORA: 12:55

**≋ Banistmo**
Primer Banco del Istmo

TRANSFERENCIA - MT100 (Swift - BISTPAPA)
Sucursal    EL DORADO

Fecha: 30/07/2003

**ORIGINAL**

| | | |
|---|---|---|
| Código Swift | : | C21000021 |
| Nombre del Corresponsal | : | THE CHASE MANHATTAN BANK N.Y. - (GIROS) |
| Referencia | (*20) : | TE100040252 |
| Importe | (*32) : | Fecha  030730  Moneda       Monto  50,000.00 |
| Ordenante | (*50) : | |
| Nombre: | | JUAN D. BORRELL/CTA. ▓▓▓▓4347 |
| Direccion: | | PANAMA/TEL. ▓▓-9510 |
| Pais: | | |
| Intermediario | ( 56) : | |
| Banco Beneficiario | ( 57) : | BANK OF AMERICA/ABA:063100277 |
| Beneficiario | (*59) : | SACHER, ZEIMAN, VAN SANT, PAUL, BEILY, HARTMAN 6 |
| Nombre: | | WALLMAN, P.A./CTA. ▓▓▓▓8778 |
| Direccion: | | MIAMI/E.E.U.U./TEL.305-371-8797 |
| Pais: | | TRUST ACCOUNT A/C INCOTESA RETAINER |
| Detalle del Pago | ( 70) : | |
| Detalle de gastos | ( 72) : | BENEFICIARIO |
| Inf. de Recibo | ( 72) : | |

*(stamp: PRIMER BANCO DEL ISTMO — PROCESADO — 30 JUL 2003 — OPERACIONES)*

---

FORMA DE PAGO

| | |
|---|---|
| Cuenta Corresponsal: | ▓▓▓▓006-0 |
| IMPORTE: | 50,000.00 |
| COMISION | 62.50 |
| SWIFT | 15.00 |
| CORRESP: | 0.00 |
| TOTAL: | 50,077.50 |

| No. Cuenta | Nombre | Monto | No. Cheque |
|---|---|---|---|
| ▓▓▓4347 | GISELLE BORREL DE T.. | 50,077.50 | 0 |
| | TOTAL: | 50,077.50 | |

---

| | | | | |
|---|---|---|---|---|
| Sucursal Origen : | EL DORADO | Hora: | Jul 30 2003 | 9:13:34: |
| Capturado por : | JORGE SICLAIR RILEY AYARZA | Hora: | Jul 30 2003 | 9:50:18: |
| 1era Aprobación : | LINETTE SAUDERS RAMOS | Hora: | Jul 30 2003 | 9:50:18: |
| 2era Aprobación : | BELINDA BALOCCO | | | |



R-11

# SOLICITUD DE TRANSFERENCIA INTERNACIONAL

Fecha: _____

Monto a Enviar: **US$ 50,000.00**

Moneda: **DOLARES**

(Para uso del Banco):
Comisión: _____

Sucursal/Centro: _____ Nº _____

Telex/Swift: _____

Corresponsalía: _____

TOTAL: _____

Capturado: _____ Aprobado: _____

## Datos del Ordenante:

Nombre: **JUAN D. BORRELL**   Céd/Pas Nº ▮▮▮▮**1833** Teléfono: ▮▮▮**-9510**

Dirección: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Selecciona la forma de Pago:*

☒ Efectivo   ☒ Cheque   ☒ Débito a cuenta.   Por medio de la presente autorizo a BANISTMO a debitar la

Cuenta Nº _____ A/N _____ por el valor de la transferencia, más

los gastos que ésta ocasione.   Firma Autorizada: _____

## Datos del Beneficiario: SACHER, ZELMAN, VAN SANT, PAUL, BEILY, HARTMAN & WALDMAN, P.A.

Nombre: _____   Nº de Cuenta: ▮▮▮▮▮**2778**

Dirección: **100 S.E. 2nd,, Street, Miami, Florida 33131**

Ciudad: **Miami**   País: **E.E.U.U.**   Teléfono: **(305) 371-8797**

Referencia para el beneficiario: _____

## BANCO BENEFICIARIO:

Nombre del Banco: **BANK OF AMERICA**

Dirección: **100 S.E. 2nd., Street**   Ciudad: **Miami**   País: **E.E.U.U.**

SWIFT: _____ ABA (9 dígitos): **063100277**   CHIPS ID (6 dígitos): _____

Número de cuenta: ▮▮▮▮**-2778**   Instrucciones especiales: **TRUST ACCOUNT A/C INCOTESA RETAINER**

## BANCO INTERMEDIARIO:

Nombre del Banco: _____

Dirección: _____ Ciudad: _____ País: _____

SWIFT: _____ ABA (9 dígitos): _____ CHIPS ID (6 dígitos): _____

Número de cuenta del Banco a Transferir: _____

L/ 1-03

P713

3 2901:

F-12

# TOWERBANK

SOLICITUD DE: ☐ GIRO  ☐ CHEQUE DE GERENCIA  ☑ TRANSFERENCIA  (☐ Por Aéreo  ☐ Por Cable  ☐ Por telex )

SOBRE LA PLAZA DE:

FECHA:

CANTIDAD: _35,000_

CANTIDAD (en letras): _treinta y cinco_
_mil 00/100_

BENEFICIARIO: _Audrey Johnson Van den_
_Heuf Betty, Heitmann Waldman_

No. DE CUENTA DEL BENEFICIARIO: _2778_

CON: _Bank of America_

DIRECCION: _100 S. E. 2nd Street, Miami_
_Florida 33131_

POR ORDEN: _____

NOMBRE DEL COMPRADOR: _____

DIRECCION: _____

ESTAN AUTORIZADOS A CARGARNOS POR EL TOTAL
O SUS GASTOS A NUESTRA CUENTA No.     _084-7_

FIRMA: _____

NOTA: QUEDA ENTENDIDO QUE ESTA TRANSACCION ESTA SUJETA A LAS CONDICIONES ANOTADAS EN EL REVERSO.

Principal

Comisión

Timbres

Telgr. Cable

Porte Correo

Total cobrado en
dólares o balboas

En ☐  ☐ Efectivo  ☐ Cheque No. _____

Fechado _____   Banco _____

☐ Autorizado por el Cliente cargar a su cuenta

NOTA: Este comprobante es el Recibo por el valor de la transferencia, giro,
ó cheque de gerencia que Ud. ha comprado. Para su validez
requiere la impresión de la máquina o sello del Banco y la firma del
girado.

RECIBIDO
TOWERBANK
2003 JUL 28  A 10 : 33

FO-055 REV. ABR. 2002

ABA # 063100277 — $27,000.00 Ch. 07466 de L. Cupón I. WAHD
$10,000.00 de L. wiz # _____ 084-7

FO-055 REV. ABR. 2002

F-13

51 of 76



# DATOS DE TRANSFERENCIA INTERNACIONAL

07/15/2003 12:04:30 PM

NÚMERO DE OPERACIÓN-SEC. :     10026469-1
CORRESPONSAL:                 WACHOVIA BANK, N.A.
MONEDA :                      DOLARES
MONTO DE LA TRANSFERENCIA :   84,878.90

## DATOS DEL COMPRADOR/ORDENANTE

NOMBRE :          JUAN DEMOSTENES BORRELL AROSEMENA

## DATOS DEL BANCO INTERMEDIARIO

NOMBRE DEL BANCO :          –
NOMBRE DE OFICINA :         –
DIRECCIÓN :
CIUDAD :
PAIS :

## DATOS DEL BANCO PAGADOR

NOMBRE DEL BANCO :          7 – BANK OF AMERICA
NOMBRE DE OFICINA :         29 – MIAMI , FLORIDA
DIRECCIÓN :                 201 BISCAYNE BLVD (33131)
CIUDAD :                    293-FLORIDA
PAIS :                      29-ESTADOS UNIDOS
ZONA GEOGRÁFICA        :        1 – E.U. / MEXICO
ABA :                       063100277
Swift :                            BOFAUS3M

## DATOS DEL BENEFICIARIO

NOMBRE  :          SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN AND WAI

CUENTA :                    ████2778
TIPO :                      2 – COMPANIA
DIRECCIÓN :                 BANK OF AMERICA 100 S.E. 2ND STREET, MIAMI, FL. 33131
TELÉFONO :                  001 305 371 8797
CIUDAD :                    MIAMI, FLORIDA
PAIS :                      USA
REFERENCIA BENEFICIARIO :
TRUST OPERATION A/C INCOTESA RETAINER

## OBSERVACIONES :

DIR:  100 S.E. 2ND STREET, MIAMI, FL. 33131







F-19

```
------------------------------------------------
              BANCO GENERAL, S.A.
        COMPROBANTE - TRANSFERENCIA INTERNACIONAL
------------------------------------------------
```

TRANSFERENCIA # : 10026469     BANCO CORRESP. : WACHOVIA BANK, N.A.           FECHA : 07/15/2003
CLIENTE       : JUAN DEMOSTENES BORRELL AROSEMENA                            TELEFONO : ████6364
  DIRECCION    : ███████████████████████████

DATOS DEL BENEFICIARIO
----------------------

BENEFICIARIO   : SANCHEZ, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN AND WALDMAN P.A.
  TELEFONO      : 001 305 371 8797
DIRECCION      : BANK OF AMERICA 100 S.E. 2ND STREET, MIAMI, FL. 33131
  CIUDAD        : MIAMI, FLORIDA
PAIS           : USA
REFERENCIA DEL BENEFICIARIO: TRUST OPERATION A/C INCOTESA RETAINER

  DATOS DEL BANCO A TRANSFERIR                                        TOTALES (B/.)
  ----------------------------                                        -------------
  BANCO         : BANK OF AMERICA                                     MONTO   : 84,878.90
  CUENTA        : ██████2778                                          GASTOS  : 121.10
  MONEDA        : DOLARES                                                     ----------------
  ZONA GEOGRAFICA : E.U. / MEXICO                                     TOTAL   : 85,000.00
  CODIGO SWIFT   : BOFAUS3M        CODIGO ABA:063100277
                 : 29-ESTADOS UNIDOS
  CIUDAD        : 293-FLORIDA
  DIRECCION     : 201 BISCAYNE BLVD (33131)


  DATOS DEL BANCO INTERMEDIARIO
  -----------------------------
  BANCO         :

  OBSERVACIONES
  -------------
  DIR: 100 S.E. 2ND STREET, MIAMI, FL. 33131
```

███ A AUTORIZADA : _Angye (C)_____     FIRMA AUTORIZADA : _____

Toda transferencia internacional que sea atendida despues de la 1:00 p.m., sera procesada al dia siguiente. En caso de que sea
devuelta por falta de informacion o datos incorrectos proporcionados por el cliente, este asumira los cargos por el reclamo.

COOPERATIVA DE AHORRO Y CREDITO PLEADOS DEL USAID/PANAMA, R.L.  No. 07429

PANAMA, R. DE P.  14 de JULIO de 2003

PAGUESE A LA
ORDEN DE *JUAN BORRELL*  B/.  *85,000.00*

*OCHENTA Y CINCO MIL CON 00/100*  BALBOAS

**BANCO GENERAL**
PANAMA REP. DE PANAMA
CTA. No. ██████████ 525

EXONERADO DEL IMPUESTO DE TIMBRES Y OTROS CARGOS ARTICULO 76 DE LA LEY 38 DEL 22 DE OCTUBRE DE 1980.

⑈"00074⋅29"⑈ ⑆:0000⋅0⋅70⋅8⑆: ██████████ 525"

| ASOCIADO No. | | | PAGABLE No. | | No. 07429 |
| CUENTA | DEBITOS | CANTIDAD | CUENTA | CREDITOS | CANTIDAD |
| | | | | BANCO GENERAL | |
| 14-01-01-00 PTMO. BORRELL REF. A-5.105 | | $143,500.00 | 11-11-001-01-00 BANCO GENERAL | | $85,000.00 |
| | | | 11-03-011-00-00 MANEJO PREST. PLAZO FIJO | | $9,500.00 |
| | | | 22-14-007-00-00 CUENTAS POR PAGAR NOTARIA | | $15,000.00 |
| | | | 22-18-001-00-00 DEP./PARA PAGOS A TERCEROS | | $15,000.00 |
| | | | | | |
| RESPALDO CON UN DEPOSITO A PLAZO FIJO APROBADO POR EL COMITE DE CREDITO EN SESION No. 135 DEL DIA 3 JUL/03 | | | | | |
| | $143,707/2003 | $15,000.00 | | | |
| | TOTAL B/. | $143,500.00 | FECHA | TOTAL B/. | $143,500.00 |

VERIFICADO POR:  RECIBIDO POR:

APROBADO POR:  CEDULA No.

...a pagar por correcto, liquido y exigible la suma que la Cooperativa señale en su demanda que será la que muestre la cuenta más los intereses...

En fe de lo expuesto, se firma este documento en la ciudad de Panamá, República de Panamá, CATORCE CON 00/100 ... días del mes de JULIO de 2003.

FIRMAS

1. Deudor _____  4. Coeudor _____
   Cédula No. _____  Cédula No. _____
2. Deudor _____  5. Coeudor _____
   Cédula No. _____  Cédula No. _____
3. Deudor _____  6. Coeudor _____
   Cédula No. _____



# TOWERBANK

SOLICITUD DE: ☐ GIRO   ☐ CHEQUE DE GERENCIA

SOBRE LA PLAZA DE: _____

TRANSFERENCIA: ☑ ☐ Por Aéreo   ☐ Por Cable   ☐ Por telex

FECHA: 2007 JUL 19   FECHA: 19 319

CANTIDAD: 55,721.00

CANTIDAD (en letras): _____ cinco _____ ciento veintiuno con 00/100

BENEFICIARIO: _____

No. DE CUENTA DEL BENEFICIARIO: _____

CON: _____ ABA. 063100277

DIRECCION: Bank of America 100 S.E. 2 nd

_____ Miami FL 33131

POR ORDEN: _____

NOMBRE DEL COMPRADOR: _____
REF. _____

DIRECCION: _____

Principal _____

Comisión _____

Timbres _____

Teléfono/Cable _____

Porte Correo _____

Total cobrado en _____ dólares o balboas

En _____ ☐ Efectivo   ☐ Cheque No. _____   Banco _____

Fechado _____

Autorizado por el Cliente cargar a su cuenta.

NOTA: Este comprobante es el Recibo por el valor de la transferencia, giro o cheque de gerencia que Ud. ha comprado. Para su validez requiere la impresión de la máquina o sello del Banco y la firma del cajero.

ESTAN AUTORIZADOS A CARGARNOS POR EL TOTAL _____
O SUS GASTOS A NUESTRA CUENTA No. _____

FIRMA: _____

NOTA: QUEDA ENTENDIDO QUE ESTA TRANSACCION ESTA SUJETA A LAS CONDICIONES ANOTADAS EN EL REVERSO

FO-055 REV. ABR. 2002

Case 1:08-mc-... Document... Filed... Page 56 of 75

# SOLICITUD DE TRANSFERENCIA INTERNACIONAL

PRIMER BANCO DEL ISTMO
PROCESADA
28 AGO 2003
SUC. OSARIO

Fecha: _____     Moneda: __DOLARES__

Monto a Enviar: __$105,000.00__

(Para uso del Banco):
Comisión: __100.00__          Sucursal/Centro: _____  N° ____

Telex/Swift: __15.00__

Corresponsalía: __15.00__

TOTAL: __105,130.00__          Capturado: ____  Aprobado: ____

## Datos del Ordenante:

Nombre: __JUAN D. BORRELL__     Céd/Pas N° ____-1833   Teléfono: ____-9510

Dirección: _____

*Seleccione la forma de Pago:*

☐ Efectivo  ☐ Cheque  ☒ Débito a cuenta.    Por medio de la presente autorizo a BANISTMO a debitar fondos

Cuenta N° ____7793   A/N __Takuji Tsuda__   por el valor de la transferencia, más

los gastos que ésta ocasione.   Firma Autorizada: _____

Firma Verificada OPERACIONES   Verificados OPERACIONES

## Datos del Beneficiario: SACHER, ZELMAN, VAN SANT, PAUL, BEILY, HARTMAN & WALDMAN, P.A.

Nombre: _____   N° de Cuenta: ____2778

Dirección: __100 S.E. 2nd., Street, Miami, Florida 33131__

Ciudad: __MIAMI__   País: __ESTADOS UNIDOS__   Teléfono: __(305)371-8797__

Referencia para el beneficiario: _____

## BANCO BENEFICIARIO:

Nombre del Banco: __BANK OF AMERICA__

Dirección: __100 S.E.2nd.Street__   Ciudad: __Miami__   País: __Estados Unidos__

SWIFT: _____   ABA (9) dígitos: __063100277__   CHIPS ID (6 dígitos): _____

Número de cuenta: ____2778   Instrucciones especiales: __TRUST ACCOUNT A/C INCOTESA RETAINER__

## BANCO INTERMEDIARIO:

Nombre del Banco: _____

Dirección: _____   Ciudad: _____   País: _____

SWIFT: _____   ABA (9) dígitos: _____   CHIPS ID (6 dígitos): _____

Número de cuenta: _____

PRIMER BANCO DEL ISTMO
SUC. OSARIO
RECIBIDO
NOMBRE: _____
FECHA: 28 AGO 20__

t/ 1-03

⑈3290⑈

## TOWERBANK

SOLICITUD DE  ☐ GIRO  ☐ CHEQUE DE GERENCIA  ☐ TRANSFERENCIA  ( ☐ Por Aéreo  ☐ Por Cable  ☐ Por telex )

SOBRE LA PLAZA DE: _____  FECHA: _____

CANTIDAD: *U.S. 20,000.⁰⁰*

CANTIDAD (en letras): *Veinte mil*

| | |
|---|---|
| Principal | _____ |
| Comisión | _____ |
| Timbres | _____ |
| Telgr. Cable | _____ |
| Porte Correo | _____ |

BENEFICIARIO: *Sacher Zelman Van Sant aul, Beily, Hartman & Waldman*

No. DE CUENTA DEL BENEFICIARIO: ▓▓▓▓ *2778*

CON: *Bank of America*

DIRECCION: *100 E. 2nd Street, Miami, Florida Estados Unidos*

Total cobrado en dólares o balboas _____

POR ORDEN: *Juan D. Bonell*

En  ☐ Efectivo  ☐ Cheque No. _____

NOMBRE DEL COMPRADOR: *Juan D. Bonell*

Fechado _____  Banco _____

DIRECCION: ▓▓▓▓▓▓

☐ Autorizado por el Cliente cargar a su cuenta

ESTAN AUTORIZADOS A CARGARNOS POR EL TOTAL O SUS GASTOS A NUESTRA CUENTA No. ▓▓▓▓ *184.7*

NOTA: Este comprobante es el Recibo por el valor de la transferencia, giro o cheque de gerencia que Ud. ha comprado. Para su válidez requiere la impresión de la máquina o sello del Banco y la firma del cajero.

FIRMA: _____

NOTA: QUEDA ENTENDIDO QUE ESTA TRANSACCION ESTA SUJETA A LAS CONDICIONES ANOTADAS EN EL REVERSO

FO-055 REV. ABR. 2002



F-19

# Office of International Affairs
### Department of Justice

| Home | About OIA | Geographic OIA Team Listing | Documents | Treaty Related Topics and Multilateral Affairs | Interagency International Fugitive Lookout | International Coordinators at U.S Attorney's Offices | Search OIA |

**United States Mutual Legal Assistance Treaty With Panama 102-15**
April 11, 1991

---

TREATY WITH PANAMA ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

TREATY DOC. 102-15

April 11, 1991, Date-Signed

STATUS:
[*1] PENDING: October 24, 1991. Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate.

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING THE TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PANAMA ON
MUTUAL ASSISTANCE IN CRIMINAL MATTERS, WITH ANNEXES AND APPENDICES, SIGNED AT PANAMA ON
APRIL 11, 1991

TEXT:
102D CONGRESS

SENATE

LETTER OF TRANSMITTAL

THE WHITE HOUSE, October 24, 1991.
To the Senate of the United States:

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty between the United States of America and the Republic of Panama on Mutual Assistance in Criminal Matters, with Annex and Appendices, signed at Panama on April 11, 1991. I transmit also, for the information of the Senate, the Report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties being negotiated by the United States in order to counter criminal activities more effectively. The Treaty should be an effective tool to assist in the prosecution [*2] of a wide variety of modern criminals, including members of drug cartels, "white collar criminals," and terrorists. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: (1) the taking of testimony or statements of witnesses; (2) the provision of documents,

records, and evidence; (3) the execution of requests for searches and seizures; (4) the serving of documents; and (5) the provision of assistance in locating, tracing, immobilizing, seizing and forfeiting proceeds of crime, and restitution to the victims of crime.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

GEORGE BUSH.

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,

Washington, October 16, 1991.
The PRESIDENT,
The White House.

THE PRESIDENT: I have the honor to submit to you the Treaty between the United States of America and the Republic of Panama on Mutual Assistance in Criminal Matters (the "Treaty"), with Annex and Appendices, signed at Panama on April 11, 1991. I recommend that the Treaty be transmitted to the Senate for its advice [*3] and consent to ratification.

The conclusion of this Mutual Assistance Treaty with Panama fulfills a high priority objective of U.S. foreign policy toward Panama. It also satisfies Congressional objectives in combatting drug trafficking and money laundering problems in Panama as outlined in the Conference Report to the Dire Emergency Supplemental Appropriations Act of May 25, 1990. In its Report (Report No. 101-493, 101st Cong., 2nd Sess.), the Conference Committee urged the Administration to link the provision of economic assistance to Panama with the conclusion of an agreement to exchange records on international currency transactions in connection with narcotics investigations, as well as with making steady progress toward signing a mutual legal assistance treaty.

The negotiation of this Treaty involved the highest levels of the Government of Panama. Panama's Legislative Assembly approved the Treaty on July 15, 1991, at a special session convened by President Guillermo Endara exclusively for that purpose. President Endara signed the law ratifying the Treaty on July 22 and it was published in Panama's "Official Gazette" on July 25.

The Treaty covers mutual legal assistance in criminal [*4] matters. In recent years, similar bilateral treaties have entered into force with The Bahamas, Canada, Italy, Mexico, the Netherlands, Switzerland, Turkey and the United Kingdom concerning the Cayman Islands; and others have been concluded and ratified by the United States (but have not yet entered into force) with Belgium, Colombia, Morocco, and Thailand; or concluded and signed with Argentina, Jamaica, Nigeria, Spain and Uruguay. The Treaty contains many provisions similar to those in the other treaties.

The Treaty is designed to be self-executing and will not require implementing legislation. It will enhance our ability to investigate and prosecute drug-related money laundering offenses.

Article 1 provides for assistance in the investigation, prosecution and suppression of offenses (as defined in Article 2) and in all related proceedings, whether criminal, civil or administrative (as defined in Article 2). Assistance under the Treaty will include: provision of documents, records and evidence; executing requests for searches and seizures; immobilizing forfeitable assets; obtaining witness testimony; and other forms of assistance. The article explicitly states that the Treaty is [*5] not intended or designed to provide assistance to private parties or other third parties.

The article further provides that all requests are to be executed in accordance with and subject to the limitations imposed by the laws of the Requested State. This limitation must be read in conjunction with the Annex to the provisions of the Treaty which states that the Treaty provides the necessary legal authority for

its implementation, but that it is not intended to affect the constitutional provisions of either State.

Article 2(1) defines certain key terms under the Treaty. Paragraph 1(a) incorporates into the definition of an "offense", for purposes of the Treaty, a double criminality definition analogous to that contained in modern extradition treaties. The Parties are generally satisfied that most major criminal prosecutions in the United States, except pure tax cases, would qualify for assistance under this definition. Some of those areas in which the double criminality definition might not guarantee the full measure of assistance desired by both Parties are identified in paragraph 1(b), which lists five kinds of crimes for which assistance may be obtained without establishing double [*6] criminality: crimes relating to illegal narcotics trafficking; theft; crimes of violence, and illegal currency or other financial transactions as an integral element contributing to the commission of any offense under the Treaty. As confirmed in the Annex to the Treaty, this last provision is intended to cover crimes involving money laundering or other violations of the currency or financial transaction reporting laws which contribute to drug trafficking or any other offense as defined under either Article 2(1)(a) or 2(1)(b).

Article 2(2) excludes tax matters from the definition of an offense under the Treaty unless it is shown that the monies involved derived from any activity that falls under the definition of an offense under paragraph 1. As reflected in the Annex, the Parties understand this to mean that a criminal tax prosecution involving unreported income acquired through illegal drug trafficking could qualify as an offense for which assistance could be provided.

Article 2(3) defines "proceedings" to include not only criminal proceedings but also proceedings which may be civil or administrative in nature, such as administrative proceedings to forfeit the proceeds of drug trafficking. [*7]

Article 3 sets forth the circumstances under which assistance under the Treaty may be denied. The Requested State may deny requests not in conformity with the Treaty; requests whose execution would prejudice the security or other essential public interests of the Requested State; and requests relating to military or political offenses. The Requested State may also deny a request if the underlying prosecution would be barred by double jeopardy; if there are substantial grounds to believe that the evidence sought would be used to prosecute a person on account of his race, religion, nationality or political opinions; or if there are no reasonable ground to believe that the offense has been committed, or that the evidence sought is located in the Requested State. Before denying assistance, the Central Authority of the Requested State is required to consult with the Central Authority of the Requesting State to consider whether assistance may be given, subject to such conditions it deems necessary. If the Requesting State accepts such conditions, it shall comply with those conditions. The Requested State may also postpone execution of a request or grant it subject to conditions, if execution [*8] would interfere with an ongoing investigation or proceeding in that State. The Requested State is obligated to communicate as soon as possible to the Requesting State its reasons for denying or postponing assistance.

Article 4 defines the Central Authorities for purposes of the Treaty. For the United States, the Central Authority is the Attorney General or a person designated by him. For Panama, the Central Authority is the Minister of Government and Justice or a person designated by him. It provides that requests shall be made directly between the Central Authorities.

Article 5 specifies the information to be contained in the request, including, but not limited to, the subject matter, criminal offenses and nature of the proceeding for which the request is made, a summary of the facts, a description of the evidence, information or other assistance sought, and the purpose for which it is sought. It provides that when use of compulsory process is required in the Requested State, requests shall be in writing, except that in urgent circumstances requests may be made orally, but they must be confirmed in writing "forthwith."

Article 6 obligates the Central Authorities of each Party to [*9] comply promptly with a request or, when appropriate, to transmit a request to the authority having jurisdiction to execute it. That authority is required to use all legal means to execute the request. The article also states that the judicial authorities of the Requested State shall have jurisdiction to issue subpoenas, search warrants or other orders necessary to

execute a request.

Article 7 apportions costs between the two States in executing ordinary requests and provides for consultation when expenses of an extraordinary nature are required to execute a request.

Article 8 establishes procedures for ensuring the confidentiality of requests and their contents and for restricting the use of any information or evidence obtained under the Treaty or derived therefrom.

Article 9 provides that the Requested State, in accordance with its laws, may compel the taking of testimony or production of documents in its territory on behalf of the Requesting State. The article further specifies that any assertion of immunity, incapacity or privilege available under the laws of the Requesting State will be noted for later resolution by the Requesting State but will not preclude the taking of testimony [*10] or the production of documents in the Requested State. The article also requires the Requested State to furnish information about the date and place of the taking of testimony and to permit the presence of any persons specified in the request, such as the accused, counsel for the accused or other interested person. Such person may participate in the taking of testimony subject to the laws of the Requested State. The article specifies a procedure for the authentication of business records produced, using forms appended to the Treaty. In an understanding annexed to the Treaty, the Parties specify the legal requirements under their respective laws for the reporting of currency transaction information and agree that this Article may be used to obtain such information in connection with offenses covered by the Treaty.

Article 10 provides for the voluntary transfer to the Requesting State of a person in custody in the Requested State in order to give testimony, if the Requested State consents. Under this article, a person in custody in the Requesting State may also be voluntarily transferred in custody to the Requested State for purposes of participating in the execution of a request under [*11] Article 9. The article further specifies the requirements for keeping the person in custody, insuring the person's return, and deducting the time spent in custody in one State pursuant to a request made under the Treaty from the time remaining to be served in the other State.

Article 11 provides a mechanism for a Requesting State to invite the voluntary appearance and testimony in that State of a person located in the Requested State. In such a case, the Central Authority of the Requested State is required to invite the person's appearance in a non-compulsory manner, advise the person of the kind and amount of expenses to be reimbursed by the Requesting State, and inform the Requesting State promptly of the person's reply.

Article 12 provides safe conduct to a person temporarily in the Requesting State for testimonial or confrontation purposes pursuant to a request under Article 10 or 11 of the Treaty. Such a person would be immune from service of process, prosecution, detention or restriction of personal liberty for any act which occurred before his or her departure from the Requested State. Such immunity would cease ten days after being notified that his or her presence is no longer [*12] needed.

Article 13 states that the Requested State shall provide the Requesting State with copies of publicly available government records and may, in its discretion, provide any other records or information in the possession of a government office or agency to the same extent and under the same conditions as it would to its own law enforcement and judicial authorities. The article requires official attestation of documents and information, using a form appended to the Treaty.

Article 14 provides a mechanism for one Central Authority to notify the other when it believes the proceeds of a criminal offense are in the territory of the other State and requires the latter to submit the information to its authorities for a determination of appropriate action, to the extent that it has jurisdiction in this regard. The article further provides that, to the extent permitted by their respective laws and this Treaty, the Parties shall assist each other in proceedings relating to the forfeiture of the fruits or instrumentalities of offenses, restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions.

Article 15 obligates each State to execute [*13] requests for search, seizure and delivery of any item to the

Requesting State in accordance with the laws of the Requested State. The article also establishes a mechanism for ensuring the admissibility of the items produced or seized under the Treaty, including provision of attestations in compliance with a form appended to this Treaty. The article further provides that the rights of third parties to such items shall be duly respected.

Article 16 requires the Requested State to make best efforts to ascertain the location or identity of persons, such as witnesses or suspects, specified in a request.

Article 17 obligates the Requested State to effect service of any document related to a request properly made. This obligation does not extend to subpoenas requiring any person to appear before a tribunal or authority in the Requesting State. Any request for the service of an invitation to appear in the Requesting State must be transmitted at least thirty days in advance of the scheduled appearance. The Requested State is required to return as proof of service a dated receipt signed by the person served or a declaration by the officer effecting service stating the form and date of service. [*14]

Article 18 provides that the Treaty does not impede any assistance or procedure available under other international conventions or arrangements or under the domestic laws of the parties. It further requires the Parties to pursue assistance through the mechanisms established by this Treaty. Finally, this article confirms that no private party or third party may invoke the provisions of this Treaty to exclude evidence or impede the execution of a request.

Article 19 provides that Parties shall consult to develop further specific agreements or arrangements on mutual legal assistance. They may further agree on practical measures to facilitate implementation of this Treaty.

Article 20 provides that the Treaty shall enter into force immediately upon the exchange of the instruments of ratification.

Article 21 provides for termination to be effective six months after written notice of termination is given by one State to the other.

A Technical analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation, consisting of representatives from the Departments of Justice and State, and will be transmitted separately to the Senate Committee [*15] on Foreign Relations. The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate as soon as possible.

Respectfully submitted,

LAWRENCE S. EAGLEBURGER.

TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PANAMA ON
MUTUAL ASSISTANCE
IN CRIMINAL MATTERS

The Government of the United States of America and The Government of the Republic of Panama,

Desiring to provide more effective cooperation between the two States in the investigation, prosecution, and suppression of serious crimes, such as narcotics trafficking; and desiring to improve coordination and mutual assistance in law enforcement matters in general;

Have agreed as follows:

ARTICLE 1

OBLIGATION TO ASSIST

2/9/2004 9:39 AM

1. The Contracting States agree, in accordance with the provisions of this Treaty, to provide mutual assistance in the investigation, prosecution and suppression of offenses and in proceedings connected therewith, as defined in Article 2.

2. Assistance shall include:

(a) taking the testimony or statements of persons;

(b) providing documents, records, and articles of evidence;

(c) executing requests for searches and seizures;

(d) transferring persons in custody for testimonial [*16] purposes;

(e) serving documents;

(f) locating persons;

(g) exchanging information in relation to the investigation, prosecution and suppression of offenses;

(h) immobilizing forfeitable assets; and

(i) any other matter mutually agreed upon by the Contracting States.

3. This Treaty is intended solely for mutual legal assistance between the criminal law enforcement authorities of the Contracting States and is not intended or designed to provide such assistance to private parties or other third parties.

4. All requests under this Treaty shall be executed in accordance with and subject to the limitations imposed by the laws of the Requested State. The method of execution specified in the request shall be followed except to the extent prohibited by the laws of the Requested State.

ARTICLE 2

DEFINITIONS

1. For the purposes of this Treaty, the term "offense" means:

(a) any conduct punishable as a crime under the laws of both the Requesting and Requested States; or

(b) any conduct punishable as a crime under the laws of the Requesting State by one year's imprisonment or more, and which arises from, relates to, results from, or otherwise involves:

(i) illegal narcotics or drug activity [*17] as referred to in Article 36 of the Single Convention on Narcotic Drugs, 1961, as amended by the 1972 Amending Protocol to the Single Convention on Narcotic Drugs, 1961;

(ii) theft;

(iii) a crime of violence;

(iv) fraud or the use of fraud, including the obtaining of money or property by false pretenses, representations, or promises and including the commission of embezzlement, and all conduct which has the effect of defrauding the government, its agencies, or its citizens of the ability to conduct their affairs free from fraud, false

statements and deceit; or

(v) a violation of a law of one of the contracting states relating to currency or other financial transactions as an integral element contributing to the commission of any offense within the meaning of the foregoing provisions of this paragraph.

2. Offense for the purposes of this Treaty does not extend to any matter which relates directly or indirectly to the regulation, including the imposition, calculation and collection of taxes except any matter pertaining to monies shown to be derived from any activity within the provisions of paragraph 1 of the foregoing definition.

3. For the purposes of this Treaty, the term "proceeding" [*18] means the presentation of evidence to:

(a) any court in a criminal trial in the Requesting State (including pre-trial motions);

(b) any grand jury in the United States or any preliminary investigation by the competent authorities of the Republic of Panama;

(c) any court or administrative agency in a hearing which could result in an order imposing forfeiture of fruits or instrumentalities of narcotics trafficking;

(d) in the discretion of the Central Authority of the Requested State any court in a criminal or civil hearing which could result in an order imposing civil or criminal punishment, restitution to any victims of an offense, or the collection of fines imposed as a sentence in a criminal prosecution; or

(e) in the discretion of the Central Authority of the Requested State any administrative agency performing an adjudicatory function in the Requesting State in respect of the imposition of civil or administrative sanctions upon the offender ancillary to proceedings taken under (a), (b) or (d).

ARTICLE 3

LIMITATIONS ON COMPLIANCE

1. The Central Authority of the Requested State may deny a request to the extent that:

(a) execution of the request would prejudice the security [*19] or essential public interests of the Requested State;

(b) the request relates to a political offense;

(c) the evidence requested is to be used for the purpose of a trial of a person on a charge for which that person has been previously convicted or acquitted at a trial in the Requesting State, or was in jeopardy, under the laws of the Requesting State, of being convicted at that trial;

(d) there are substantial grounds leading the Central Authority of the Requested State to believe that compliance would facilitate the prosecution or punishment of the person to whom the request refers on account of his race, religion, nationality or political opinions;

(e) the request does not establish that there are reasonable grounds for believing:

(i) that the criminal offense specified in the request has been committed; and

(ii) that the information sought relates to the offense and is located in the territory of the Requested State; or

(f) the request is not in conformity with the provisions of this Treaty.

2. Before denying any request pursuant to this Article, the Requested State shall determine whether assistance can be given subject to such conditions as it deems necessary. If the Requesting [*20] State accepts assistance subject to these conditions, it shall comply with the conditions.

3. If execution of a request would interfere with ongoing proceedings in the Requested State, execution may be postponed by that State, or made subject to conditions determined necessary by that State after consultation with the Requesting State.

4. The Requested State shall promptly inform the Requesting State of the reason for denying or postponing the execution of a request.

ARTICLE 4

CENTRAL AUTHORITIES

1. A Central Authority shall be established by each Contracting State.

2. For the United States of America, the Central Authority shall be the Attorney General or a person designated by him.

3. For The Republic of Panama, the Central Authority shall be the Minister of Government and Justice or a person designated by him.

4. Requests under this Treaty shall be made by the Central Authority of the Requesting State to the Central Authority of the Requested State.

ARTICLE 5

CONTENTS OF REQUESTS FOR MUTUAL ASSISTANCE

1. Requests shall be submitted in writing where compulsory process is required in the Requested State or where otherwise required by the Requested State. In urgent circumstances, [*21] such requests may be made orally, but shall be confirmed in writing forthwith.

2. The request shall include the following:

(a) the name of the agency or law enforcement authority conducting the proceeding to which the request relates;

(b) the subject matter and nature of the proceeding for the purposes of which the request is made and in particular the criminal offenses for the investigation, prosecution or suppression of which the assistance is requested and a summary of the facts which form the basis thereof;

(c) a description of the evidence or information sought or the acts of assistance to be performed; such description shall specify where possible the time period to which any such evidence or information relates;

(d) the purpose for which the evidence, information, or other assistance is sought; and

(e) an indication of any time limit within which compliance with the request is desired, stating reasons.

3. To the extent necessary and possible, a request shall also include:

(a) available information on the identity and whereabouts of a person to be located;

(b) the identity and location of a person to be served, that person's relationship to the

proceedings, and the manner [*22] in which service is to be made;

(c) the identity and location of persons from whom evidence is sought;

(d) a precise description of the place or person to be searched and of the objects to be seized;

(e) a description of the type and amount of expenses which the Requesting State is willing to assume in the execution of the request; and

(f) any other information which may be brought to the attention of the Requested State to allow it to execute the request.

ARTICLE 6

EXECUTION OF THE REQUEST

1. The Central Authority of the Requested State shall promptly comply with the request or, when appropriate, shall transmit it to the authority having jurisdiction to do so. That authority shall use all legal means within its power to execute the request. The courts of the Requested State shall have jurisdiction in accordance with its laws to issue subpoenas, search warrants, or other process necessary in the execution of the request.

2. When execution of the request requires judicial or administrative action, the request shall be presented to the competent authority by the persons designated by the Central Authority of the Requested State.

ARTICLE 7

COSTS

1. The Requesting State shall assume [*23] all ordinary expenses required to present evidence from the Requested State in the Requesting State, including:

(a) travel and incidental expenses of witnesses travelling to the Requesting State, including those of accompanying officials;

(b) fees of experts; and

(c) fees of counsel appointed with the approval of the Requesting State for a person giving testimony or for a defendant.

2. The Requested State shall assume all ordinary expenses of executing a request within its boundaries, except the following costs which shall be borne by the Requesting State:

(a) fees of experts;

(b) expenses of translation and transcription;

(c) travel and incidental expenses of persons travelling to the Requested State to attend the execution of a request;

(d) reasonable costs of locating, reproducing, and transporting to the Central Authority of the Requesting State documents or records specified in a request; and

(e) costs of stenographic reports requested by the Central Authority of the Requesting State, other than reports prepared by a salaried government employee.

3. If during the execution of the request it becomes apparent that expenses of an extraordinary nature are required to fulfill [*24] the request, the Parties shall consult to determine the terms and conditions under

which the execution of the request may continue.

4. The Parties shall agree, pursuant to Article 19, on practical measures as appropriate for the reporting and payment of costs in conformity with this Article.

5. A witness who appears in the territory of the Requesting State pursuant to Article 11 shall be entitled to the same fees and allowances ordinarily accorded to a witness in the territory of the Requesting State.

6. A witness who appears in the territory of the Requested State pursuant to Article 9 shall be entitled to such fees and allowances as shall be agreed between the Central Authorities.

ARTICLE 8

LIMITATIONS ON USE

1. The Requesting State shall not use any information or evidence obtained under this Treaty, nor any information derived therefrom, for purposes other than those stated in the request without the prior consent of the Requested State.

2. Unless otherwise agreed by both Central Authorities, information or evidence furnished under this Treaty shall be kept confidential, except to the extent that the information or evidence is needed for investigations or proceedings forming part [*25] of the prosecution of a criminal offense described in the request.

3. If the request cannot be executed without breaching the required confidentiality, the Requested State shall so inform the Requesting State which shall then determine whether the request should nevertheless be executed.

4. Information or evidence made public in the Requesting State in a trial resulting from the proceedings described in the request may be used only for the following additional purposes:

(a) where a trial results in conviction for any criminal offense within the scope of this Treaty, for any purpose against the person(s) convicted;

(b) whether or not a trial results in the conviction of any person, in the prosecution of any person for any criminal offense within the scope of this Treaty; and

(c) in civil or administrative proceedings, only if and to the extent that such proceedings relate to:

(i) the recovery of the unlawful proceeds of a criminal offense within the scope of this Treaty from a person who has knowingly received them;

(ii) the collection of tax or enforcement of tax penalties resulting from the knowing receipt of the unlawful proceeds of an offense within the meaning of paragraph [*26] 1 of Article 2 of this Treaty; or

(iii) the recovery in rem of the unlawful proceeds or instrumentalities of an offense referred to in the preceding subparagraph (ii).

ARTICLE 9

TESTIMONY IN THE REQUESTED STATE

1. A person requested to testify or to produce documentary information or articles in the territory of the Requested State may be compelled to do so in accordance with the requirements of the law of the Requested State.

2. If the person testifying or required to produce documents in the Requested State asserts a claim of

immunity, incapacity, or privilege under the laws of the Requesting State, his testimony or the production of documents shall nonetheless be taken or made, as the case may be, and the claim made known to the Requesting State for resolution by the authorities of the Requesting State.

3. The Requested State shall furnish information in advance about the date and place of the taking of testimony of the witness.

4. The Requested State shall authorize the presence of such persons as specified in the request during the execution of the request and, subject to the laws of the Requested State, allow such to question the person whose testimony is sought.

5. Business [*27] records produced under this Article shall be authenticated by the person in charge of maintaining them through the use of Form A(1) or Form A(2) appended to this Treaty, which shall be executed under oath. No further certification shall be required. Documents authenticated as provided by this paragraph shall be admissible in evidence in proof of the truth of the matter set forth therein.

## ARTICLE 10

TRANSFERRING PERSONS IN CUSTODY FOR TESTIMONIAL PURPOSES

1. A person in custody in the Requested State who is needed as a witness in connection with the execution of a request in the Requesting State shall be transported to that State if the person consents and if the Requested State has no reasonable basis to deny the request.

2. A person in the custody of the Requesting State whose presence in the territory of the Requested State is needed in connection with the execution of a request under this Treaty may be transported to the territory of the Requested State if the person and both States consent.

3. For the purpose of this Article:

(a) the receiving State shall be responsible for the safety and health of the person transferred and have the authority and obligation to keep the person [*28] transferred in custody unless otherwise authorized by the sending State;

(b) the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or otherwise agreed and in any event no later than the date upon which he would have been released from custody in the territory of the sending State;

(c) the receiving State shall not require the sending State to initiate extradition proceedings; and

(d) the person transferred shall receive credit for the service of the sentence imposed in the sending State for time served in the custody of the receiving State.

## ARTICLE 11

TESTIMONY IN THE REQUESTING STATE

When the appearance of a person who is in the territory of the Requested State is needed in the territory of the Requesting State for the purpose of execution of a request under this Treaty, the Central Authority of the Requesting State may request that the Central Authority of the other State invite the person to appear before the appropriate authority in the territory of the Requesting State. The person required shall be told the kind and amount of expenses which the Requesting State has indicated will be paid to him. The response [*29] of the person shall be communicated promptly to the Central Authority of the Requesting State. Such a person shall be under no compulsion to accept such an invitation.

## ARTICLE 12

SAFE CONDUCT

1. No person in the territory of the Requesting State to testify in pursuance of the execution of a request shall be subject to service of process or prosecution or suit or be detained or subjected to any restriction of personal liberty by reason of any acts which preceded his departure from the Requested State.

2. The safe conduct provided for in this Article shall cease if, ten days after the person appearing has been notified that his presence is no longer required, that person being free to leave, has not left the Requesting State; or, having left the Requesting State, has returned.

ARTICLE 13

PROVIDING RECORDS OF GOVERNMENT AGENCIES

1. The Requested State shall provide copies of publicly available records of a government agency or of its judicial department.

2. The Requested State may provide copies of records or information in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would to its own law enforcement [*30] or judicial authorities. The Requested State may in its discretion deny the request entirely or in part.

3. Documents provided under this Article shall be attested by the official in charge of maintaining them through the use of Form B, appended to this Treaty. No further certification shall be required. Documents attested under this paragraph shall be admissible evidence in proof of the truth of the matters set forth therein.

ARTICLE 14

ASSISTING IN FORFEITURE PROCEEDINGS

1. If the Central Authority of one State becomes aware of fruits or instrumentalities of offenses located in the other State which may be forfeitable or otherwise subject to seizure under the laws of that State related to serious offenses such as narcotics trafficking, it may so inform the Central Authority of the other State. If that other State has jurisdiction in this regard, it shall present this information to its authorities for a determination as to whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report to the other State on the action taken.

2. The Contracting States shall assist each [*31] other to the extent permitted by their respective laws and this Treaty in proceedings relating to the forfeiture of the fruits or instrumentalities of offenses, restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions.

ARTICLE 15

SEARCH AND SEIZURE

1. A request for the search, seizure and delivery of any article to the Requesting State shall be executed if it includes the information justifying such action under the laws of the Requested State.

2. Every official of the Requested State who has custody of seized articles shall certify, through the use of Form C appended to this Treaty, the continuity of custody, the identity of the article, and the integrity of its condition. No further certification shall be required. The certificates shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

3. The Requested State shall not be obliged to provide any item seized to the Requesting State unless that State has agreed to such terms and conditions as may be required by the Requested State to protect third

party interests in the item to be transferred.

ARTICLE 16

LOCATION AND IDENTITY [*32] OF PERSONS

1. The Requested State shall make best efforts to ascertain the location and identity of persons specified in a request and who are needed in connection with the investigation, prosecution or suppression of an offense in the Requesting State.

2. The Requested State shall communicate as soon as possible the results of its inquiries to the Requesting State.

ARTICLE 17

SERVING DOCUMENTS

1. The Requested State shall effect service of any document relating to or forming part of any request for assistance properly made under the provisions of this Treaty transmitted to it for this purpose by the Requesting State; provided that the Requested State shall not be obliged to serve any subpoena or other process requiring the attendance of any person before any authority or tribunal in the Requesting State.

2. Unless otherwise agreed, any request for the service of a document inviting the appearance of a person before an authority in the Requesting State shall be transmitted at least thirty days prior to the date of the scheduled appearance.

3. The Requested State shall return as proof of service a receipt signed by the person served or a declaration signed by the officer making service, [*33] specifying the form and date of service.

ARTICLE 18

COMPATIBILITY WITH OTHER TREATIES AND INTERNAL LAWS

1. Assistance and procedures provided by this Treaty shall not prevent either of the Contracting States from granting assistance to the other Party in accordance with the provisions of other international agreements to which it may be a party or in accordance with the provisions of its internal laws.

2. Subject to the terms of paragraph 1, a Party needing assistance as provided in Article 1 in the investigation, prosecution or suppression of an offense as defined in Article 2 shall request assistance pursuant to this Treaty.

3. No private party or other third party may invoke the provisions of this Treaty to exclude any evidence hereunder or to impede the execution of a request.

ARTICLE 19

IMPROVEMENT OF ASSISTANCE

1. The Parties agree to consult as appropriate to develop other specific agreements or arrangements, formal or informal, on mutual legal assistance.

2. The Parties may agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

ARTICLE 20

RATIFICATION AND ENTRY INTO FORCE

2/9/2004 9:39 AM

1. This Treaty shall be ratified and the instruments of [*34] ratification shall be exchanged at Washington, D.C. as soon as possible.

2. This Treaty shall enter into force upon the exchange of instruments of ratification.

ARTICLE 21

DENUNCIATION

Either Contracting State may terminate this Treaty by means of written notice to the other State. Termination shall take effect six months following the date of notification.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE at Panama, Republic of Panama, in duplicate, in the English and Spanish languages, both texts being equally authentic, this eleventh day of April, 1991.

FOR THE UNITED STATES OF AMERICA:

FOR THE REPUBLIC OF PANAMA:

Portion to be signed by competent official of the Government of the Republic of Panama:

I, (name of competent official) certify that (name of person who appeared) appeared before me on (date) in Panama City, Republic of Panama and signed the foregoing certification in my presence. Likewise, I declare that I warned him that under the provisions of article 355 of the Penal Code, the person who signed the foregoing certification knowing that it contained a falsehood is subject to penal sanctions [*35] for said testimony.

(Signature) ___

(Date) ___

APPENDICES:
ANNEX

The following paragraphs confirm understandings of the Government of the United States of America and the Government of the Republic of Panama regarding the Treaty on Mutual Legal Assistance in Criminal Matters.

1. (a) Article (2)(1)(b) lists the categories of offenses covered by such paragraphs:

(i) Crimes relating to illegal narcotics trafficking. The traffic in drugs is a serious problem to both countries, and it is intended that this Treaty will be a valuable tool to enhance investigations aimed at halting these offenses. Both the United States and Panama are parties to the Single Convention On Narcotic Drugs, 1961 and the 1972 Protocol Amending the Single 1961 Convention on Narcotic Drugs, which oblige the signatories to provide assistance to each other in narcotics investigations. The obligation undertaken here is consistent with that set out in these multilateral conventions, since neither the Single Convention nor the Amending Protocol conditions the obligation to provide assistance on double criminality;

(ii) Theft;

(iii) Crimes of violence, such as bank robbery, extortion, or terrorism-related crimes;

(iv) [*36] Fraud of various kinds, including the obtaining of money or property by false pretenses, and including embezzlement and fraud upon the Government. This subparagraph would include mail or wire fraud, those securities laws violations involving fraud or fraudulently obtained profits; however, the subparagraph would not include tax evasion cases not related to other offenses covered by this Treaty; and

(v) Violations of the laws involving currency or other financial transactions which contributed as an integral element to the commission of one of the crimes described above.

(b) Article (2)(2) permits denial of assistance when the matter is one of which relates directly or indirectly to the regulation of taxes, including the imposition, calculation, and collection of taxes. The subparagraph specifically notes that exceptions to this restriction exist where the monies involved in the tax matter were derived from any activity covered by Article 2(1)(a) or 2(1)(b). For example, a criminal tax prosecution in the United States involving unreported income acquired through illegal drug trafficking could qualify as an offense for which assistance could be provided under the Treaty.

2. [*37] Article 9 of the Treaty may be used by either Contracting State as a means to obtain currency transaction information from the other Contracting State in connection with offenses covered by this Treaty.

(a) Currency transaction information includes information regarding transactions in currency in excess of $ 10,000 US or its equivalent in foreign currency by, through or to a financial institution on its own behalf or on behalf of a customer which financial institutions within the territory of each Contracting State are obligated by national laws and regulations to record and maintain for a period of no less than five years. Such information involves, at a minimum:

(i) the name, address, date of birth, business and occupation of the person or persons conducting the transaction; information regarding the name and address of such person shall be verified by requiring the production of reliable identity documentation;

(ii) whether the transaction is being conducted on behalf of a person or persons other than the person or persons conducting the transaction, and if so the name, address, business and occupation of the person or persons on whose behalf the transaction is being [*38] conducted;

(iii) the amount, date and nature of the transaction, including the account numbers and, if possible, the type of account; and

(iv) the account or accounts affected by the transaction, including the account numbers and, if possible, the type of account; and

(v) the name, address, identification number (if applicable), and type of financial institution where the transaction was conducted.

(b) For the United States, at the present time, the requirement to report currency transaction information derives from the Currency and Foreign Transactions Reporting Act (31 U.S.C. 53, et seq), its implementing regulations (31 C.F.R. Part 103) and forms (I.R.S. Form 4789).

Case 1:08-mc-21474-ASG   Document 2   Entered on FLSD Docket 05/21/2008   Page 73 of 75

(c) For the Republic of Panama, at the present time, the requirement to record currency
transaction information derives from Decreto de Cabinete No. 41 del 13 de febrero de 1990 POR EL
CUAL SE DICTAN MEDIDAS ADMINISTRATIVAS PARA PREVENCION Y SANCION DE
OPERACIONES
BANCARIAS CON FONDOS PROVENIENTES DE ACTIVIDADES ILICITAS RELACIONADAS CON
DROGAS
Y SE OTORGAN FACULTADES A LA COMISION BANCARIA NACIONAL PARA TAL EFECTO,
National
Banking Commission Acuerdo No. 5-90; dated March 19, 1990 POR EL CUAL SE ADOPTA EL [*39]
REGLAMENTO PARA PREVENCION DE OPERACIONES EN EFECTIVO CON O SOBRE FONDOS
PROVENIENTES DE ACTIVIDADES ILICITAS RELACIONADAS CON DROGAS; National Banking
Commission Acuerdo No. 1-91 POR EL CUAL SE ADOPTA EL REGLAMENTO PARA PREVENCION DE
OPERACIONES EN CHEQUES (DE GERENCIA, DE VIAJEROS U OTROS) Y ORDENES DE PAGO
LIBRADOS
AL POR TADOR, CON ENDOSO EN BLANCO Y EXPEDIDOS EN UNA MISMA FECHA O EN FECHAS
CERCANAS Y/O POR UN MISMO LIBRADOR O LIBRADORES DE LA MISMA PLAZA CON O SOBRE
FONDOS PROVENIENTES DE ACTIVIDADES ILICITAS RELACIONADAS CON DROGAS; dated January
15, 1991, forms CBN-EFE-P, CBN-EFE-C, CBN-EFE-H and CBN-DOC and other forms and records
required to be maintained by the National Banking Commission.

3. This Treaty provides the necessary legal authority to carry out and fully implement all of its provisions to
their fullest scope (to the extent that this legal authority does not already exist) for all competent authorities
within the Governments of the respective Contracting States; provided however, that as indicated in Article
1(4) nothing herein is intended to affect the constitutional provisions of either State.

APPENDIX

Form A(1)
ROP

Certificate of Authenticity of Business [*40] Records

Portion to be signed by authorized person:

I, , knowing that I am subject to penal sanction for false testimony, declare the following:

1. That I am employed by (name of employer) , a company which is (describe type of business).

2. That I am employed as (title) .

3. That I am duly authorized and qualified to make this declaration by virtue of my employment.

4. I hereby certify that the records attached to this declaration are the original or true copies of the records
that:

a. were made by a person, (or based on information transmitted by a person) with knowledge of the facts or
matters referred to in said documents, at the time or near the time at which said facts or matters occurred;

b. that such records were kept in the course of a regularly conducted business activity;

c. that the business activity made such records as a regular business practice; and

d. if such record is not the original, such record is a duplicate of the original.

5. The originals or duplicates of these records are maintained in (location).

(Signature) ___

(Date) ___

Form A(2)
USA

Certificate of Authenticity of Business Records

I, (name) , knowing that I am subject to penal sanction for [*41] false testimony, declare the following:

1. That I am employed by (name of employer) , a company which is (describe type of business).

2. That I am employed as (title) .

3. That I am duly authorized and qualified to make this declaration by virtue of my employment.

4. I hereby certify that the records attached to this declaration are the original or true copies of the records that:

a. were made by a person (or based on information transmitted by a person) with knowledge of the facts or matters referred to in said documents at the time or near the time at which said facts or matters ocurred;

b. that such records were kept in the course of a regularly conducted business activity;

c. that the business activity made such records as a regular business practice; and

d. if such record is not the original, such record is a duplicate of the original.

5. The originals or duplicates of these records are maintained in (location).

(Signature) ___

(Date) ___

Form B

Attestation of Authenticity of Documents

I, (name), knowing that any false testimony on my part subjects me to criminal sanction, ATTEST:

1. That I hold the position of (position), at (name of the institution and Government [*42] to which it belongs);

2. That as part of the functions of my position I am authorized by the laws of (State to which it belongs) to attest that the documents attached hereto and which I describe below are authentic copies of the original official documents which are filed at (name of the respective official entity and government to which it belongs), which is a governmental agency or entity of the government of (name of country).

Description of the Documents:

(Signature) ___

(Title) ___

(Date) ___

Form C

Attestation of Seized Articles

I, (name), knowing that any false testimony on my part subjects me to criminal sanctions, ATTEST:

1. That I hold the position of (position), at (name of the institution and Government to which it belongs);

2. That I have received custody of the article(s) mentioned below from (name and position of the person, date, and place);

3. That I have transferred custody of said article(s) to (name and position of the person, date and place);

4. That at this time the article(s) are in the same condition as when I received them or with the changes listed below.

Description of the Articles.

Changes in condition while in my custody:

(Signature) ___

(Position) [*43] ___

(Date) ___

---

*The Office of International Affairs* Department of Justice * 1301 New York Ave., NW * Suite 900 * Washington, D.C. 20005*

---

*Last updated by usdoj-crm/mis*
*January 10, 2001*